Maya DVILANSKY

v.

James CORREU

NO. 2016-CA-0279

Court of Appeal of Louisiana, Fourth Circuit.

October 26, 2016

Joan L. Miller, PROJECT SAVE, P. O. Box 50159, New Orleans, LA 70150-0159, COUNSEL FOR PLAINTIFF/APPEL-LEE

Marc D. Winsberg, Jonathan D. Gamble, Robin Penzato Arnold, WINSBERG & ARNOLD, 650 Poydras Street, Suite 2050, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Paul A. Bonin, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins)

Judge Daniel L. Dysart

On November 6, 2015, the trial court rendered a judgment granting Maya Dvilansky's Petition for Protection from Abuse on behalf of herself and her minor child, directed to appellant, James Correu. On November 13, 2015, new counsel for Mr. Correu filed a Motion for New Trial, which was denied. Mr. Correu has appealed. After a thorough review of the record on appeal and finding the trial court did not abuse its discretion, we affirm the judgment of the trial court.

## BACKGROUND:

On September 30, 2015, Ms. Dvilansky appeared at the New Orleans Family Justice Center, where an employee took photographs of injuries to her arm, which Ms. Dvilansky reported were the result of an altercation with her husband on September 27, 2015. Five days after the incident, Ms. Dvilansky left the home with her child, and filed a Petition for Protection from Abuse.

In her original petition seeking a temporary restraining order, Ms. Dvilansky alleged that Mr. Correu had shoved her, stalked her, threatened her life, and sexually abused her. She sought an *ex parte* temporary restraining order prohibiting Mr. Correu from abusing or contacting her, and from going within one hundred yards of the residence where Ms. Dvilansky was residing.[1] She also requested the temporary custody of the child, and that a deputy escort her to the matrimonial domicile to retrieve necessary clothing and other personal property for her. Last, Ms. Dvilansky requested child support and alimony, and that Mr. Correu attend professional counseling. A duty judge signed the temporary restraining order on October 2, 2015, and ordered Mr. Correu to appear on October 23, 2015, to show cause why the temporary restraining order should not be converted to a Protective Order.

On the day of the scheduled trial, Ms. Dvilansky filed a Supplemental and Amending Petition for Protection from Abuse. She made additional allegations of abuse prior to the September 27, 2015, incident. Specifically, she alleged that Mr. Correu attempted to have sex with her against her will, that he was rough in his handling of the baby, that he would not let the baby eat,[2] that he denied her money to

---

1. Ms. Dvilansky did not reveal the location of where she was residing with the child.

2. Ms. Dvilansky explained that she was breast-feeding on demand.

buy food and medicine, and that he constantly shouted, cursed, criticized and insulted her.

The trial was continued to November 6, 2015, at which time the court heard testimony from both parties, and Mr. Correu's mother.

Ms. Dvilansky testified that on September 27, 2015, the parties were involved in an altercation at home in the presence of their then 41/2 month old daughter. Ms. Dvilansky testified that she became concerned about the welfare of her daughter after Mr. Correu "grabbed" the baby from her crib and walked out of the room. She admitted that she grabbed his shirttail in an attempt to stop him. She testified that Mr. Correu shoved his elbow into her, causing her to fall against a wall and scrape her elbow.

In addition to this incident, Ms. Dvilansky testified that Mr. Correu had been physical with her on other occasions, had made threats to harm her and their daughter, withheld money to purchase food and medicine, had sexually abused her and was generally verbally abusive.

Mr. Correu testified that on the day of the incident, he was attempting to read parts of a parenting book to Ms. Dvilansky as he was concerned about Ms. Dvilansky's child-rearing abilities. As they were arguing, he noticed the baby was upset so he picked her up from her crib. Ms. Dvilansky tried to take the baby from him, but he walked away. Halfway down the hallway, Ms. Dvilansky grabbed him and they both fell into the wall. He pulled away, walked to the living room and called the police.

Both parties testified that the police interviewed each of them, but left without charging either of them.

Mr. Correu denied that he withheld money from his wife, stating that he kept money in her bedside drawer for her use. He denied ever pushing, shoving or threatening his wife, or coercing or forcing her to have sex. He testified that contrary to his wife's assertions that he tried to isolate her, he encouraged her to leave the home to meet with friends.

Mr. Correu's mother testified that she never witnessed her son being abusive to his wife.

Mr. Correu's attorney offered into evidence a police report made of the September 27, 2015, incident. Ms. Dvilansky's attorney objected to the introduction of the police report as hearsay, which the trial court sustained. The trial court granted the Protective Order from the bench, and Mr. Correu was served in open court. In addition to finding Mr. Correu to be a credible threat to Ms. Dvilansky and the child, the court granted Ms. Dvilansky temporary sole custody, allowing Mr. Correu supervised visitation at Harmony House/Kingsley House. The court again ordered that a deputy accompany Ms. Dvilansky to the former matrimonial domicile to retrieve personal belongings,[3] ordered Mr. Correu to pay $400 per month in child support beginning October 2, 2015, and continuing until proceedings were had to determine the proper statutory amount. Further, Mr. Correu was ordered to seek professional counseling through the Batterer's Intervention Program. The Protective Order is in effect until May 6, 2017.

Following the trial, Mr. Correu sought new counsel and on November 13, 2015, filed a Motion for New Trial, alleging that Ms. Dvilansky made false allegations in her petition and lied under oath at trial. He acknowledged that the police report was hearsay, but nevertheless cited to it as

---

**3.** Ms. Dvilansky testified that the first time she went to the house with a deputy, Mr. Correu's mother did not allow her to take certain items she needed for the baby's care.

proof that no physical abuse had occurred. The argument for a new trial was based on Mr. Correu's prior counsel's neglect to present admissible corroborating evidence.

The trial court denied the motion and issued written reasons on November 30, 2015. It explained that there was no just cause to grant a new trial as Mr. Correu was represented by counsel and was afforded a fair opportunity to defend himself.[4]

## DISCUSSION:

Protective orders are issued in domestic violence matters pursuant to the Domestic Abuse Assistance Act, La. R.S. 46:2131, *et seq.* The purpose of the law is to provide relief to victims of domestic violence by establishing a civil remedy for domestic violence that affords the victim(s) immediate and easily accessible protection. *Alfonso v. Cooper,* 14–0145, p. 13 (La.App. 4 Cir. 7/16/14), 146 So.3d 796, 805. La. R.S. 46:2135 and 46:2136 require that there be "good cause shown" for the issuance of a protective order. "Good cause shown" is defined in La. R.S. 46:2135 as a showing of "immediate and present danger of abuse." Additionally, the definition of domestic abuse includes, but is not limited to, physical or sexual abuse or any offense against the person, physical or non-physical, as defined in the Louisiana Criminal Code, except negligent injury and defamation, committed by one family or household member against another. La. R.S. 46:2132(3). The court may grant a protective order to bring about a cessation of abuse of a party. La. R.S. 46:2136 A.

Louisiana courts have held that the definition of domestic abuse in La. R.S. 46:2132(3) does not include nonphysical acts, such as general harassment and family arguments, if those acts do not rise to the level of physical or sexual abuse in violation of the criminal code, or an offense against a person. *Lee v. Smith,* 08–455, p. 9 (La.App. 5 Cir. 12/16/08), 4 So.3d 100, 106; *also see Rouyea v. Rouyea,* 00–2613, p.5 (La.App. 1 Cir. 3/28/01), 808 So.2d 558, 561; *Harper v. Harper,* 537 So.2d 282, 285 (La.App. 4th Cir. 1988).

An appellate court reviews domestic protective orders for abuse of discretion. *Alfonso,* 14–0145, p. 13, 146 So.3d at 805. Moreover, the standard of review applicable to fact findings of the trial court has been clearly enunciated by our Supreme Court in *Rabalais v. Nash,* 06–0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657:

It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong .... To reverse a fact-finder's determination, the appellate court must find from the record a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. *Mart v. Hill,* 505 So.2d 1120, 1127 (La. 1987). Where the [fact-finder's] findings are reasonable, in light of the record reviewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong.

In matters of credibility, an appellate court must give great deference to the findings of the trier-of-fact. *Franz v. First Bank Sys., Inc.,* 03–0448, p. 9 (La.

---

4. The trial court signed a modified Protective Order on December 2, 2015, adding language inadvertently left out of the previous order relative to prohibiting the removal of the child from the jurisdiction of the court.

App. 4 Cir. 2/11/04), 868 So.2d 155, 162 (citing *Rosell v. ESCO*, 549 So.2d 840 (La. 1989)). The trial court is in the best position to view the demeanor and mannerisms of the witnesses. *Id.* When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882–83 (La. 1993).

■ Mr. Correu first argues that the trial court erred in finding that he had abused Ms. Dvilansky. He maintains that the trial court's judgment was capricious in that there was no substantial evidence of abuse presented to warrant the issuance of a protective order. Specifically, he argues that the trial court failed to consider that Ms. Dvilansky was the aggressor during the September 27, 2015 incident, and there was no evidence that Mr. Correu had physically or sexually abused Ms. Dvilansky.

The record indicates that photographs were introduced by Ms. Dvilansky showing bruises to her upper arm and scrapes to her elbow. Some of the photographs were taken by Ms. Dvilansky with her own phone, and others were taken by a staff member of the New Orleans Family Justice Center, who authenticated the photographs at trial.

Additionally, Ms. Dvilansky testified extensively concerning incidents wherein Mr. Correu had been physical with her, threatened to harm her and the child, and withheld money for food and medicine. She also testified that he forced her to have sex against her wishes.

Ms. Dvilansky also testified that Mr. Correu was "rough" in his handling of his infant daughter, not properly supporting her head when carrying or holding her. He would wake her from sleep to "see the sun rise," and would insist on taking her into the sun without sun protection.

Mr. Correu's testimony contradicted each and every allegation made by Ms. Dvilansky.

Mr. Correu's argument that the trial court acted arbitrarily in granting the protective order is premised on the trial court's finding of credibility of the parties, and its weighing of the facts presented.

Based on our reading of the record in its entirety, we cannot say that the trial court was manifestly erroneous in finding that a protective order should issue in favor of Ms. Dvilansky and the minor child. Of particular consideration is the admonition given by the trial court for Mr. Correu to stop glaring at his wife as she testified.

The last three assignments of error are related. In his second and third assignments of error, Mr. Correu argues that the trial court erred in finding that he had abused his child, warranting the issuance of a protective order allowing him only supervised visitation with his daughter. The fourth assignment of error concerns the trial court disallowing him from presenting evidence relative to the issue of custody.

Louisiana Revised Statute 46:2136 provides, in part, that in addition to granting a protective order, the trial court may order child support, award temporary custody and/or establish temporary visitation rights, and order medical evaluations, with the final protective order to be in place for a maximum of eighteen months.

Clearly, the trial court acted within the law in issuing the protective order and the attendant orders. Mr. Correu's argument concerning the court allowing Ms. Dvilansky to present evidence concerning custody and preventing him from doing so is misplaced. Our review of the record does not reveal that any of Ms. Dvilansky's

testimony was directed to custody; rather, her testimony was concentrated on the events which led her to seek protection. Further, it is clear that the court's ruling was based upon the credibility of the parties. As noted above, we must defer to the trial court's findings.

Accordingly, for the reasons set forth above, we affirm the trial court's judgment.

**AFFIRMED**

BONIN, J., DISSENTS IN PART WITH REASONS

BONIN, J., DISSENTS IN PART WITH REASONS

I respectfully dissent about the disposition of an issue raised by Mr. Correu concerning the issuance of the protective order as it relates to the couple's child and the ensuing overly restrictive terms and conditions of his visitation.

I agree with Mr. Correu's contention that there is an insufficient factual basis for a finding that this child is a "victim of family violence" within the statutory definition. " 'Victim of family violence' means the family or household member abused and his or her children *who might be in danger if left in the domicile.*" La. R.S. 46:2121.1 (3) (emphasis added). There is simply no evidence that the father's physically abusive behavior was directed toward his child or that the child was or would be physically endangered by the acts of the father. Thus, there could be no *independent* basis for the issuance of an order for protection of the child. This factual error, moreover, interdicts the trial judge's decision on visitation. Accordingly, I would reverse and remand for a reconsideration of the decree insofar as the visitation provisions.

But because the Legislature finds that "children, though often not physically as-

saulted, suffer deep and lasting emotional effects, and it is most often the children of those parents who commit family violence that perpetuate the cycle by abusing their spouses," La. R.S. 2121 B, that the order which here protects the mother extends to and covers the child. *See* La. R.S. 46:2135 A, 2136 A. And, for that reason, there is now no practical relief for Mr. Correu beyond seeking a modification of the protective order's visitation provisions in the district court. *See* La. R.S. 46:2136 D.