Judge Daniel L. Dysart
liOn May 6, 2016, the trial court rendered a judgment dismissing Martin Mun-ger’s Petition for Protection from Abuse, and granting Yuliya Sirenko’s Order of Protection. Mr. Munger appeals the judgment. After review, we affirm the trial court’s judgment.
BACKGROUND:
The parties were married in the United Arab Emirates on December 17, 2014. The couple moved to the United States in early 2015, with their young son, Nikolas, who was nineteen months old at the time this trial began on March 21, 2016.[1] Mr. Mun-ger testified that the couple moved here to live, but Ms. Sirenko testified that the move was temporary.
Following an incident on August 21, 2015, Mr. Munger filed a Petition for Protection from Abuse in the Civil District Court. In connection with the filing of | gthe petition, Ms. Sirenko was granted supervised visitation with their son at Harmony House[2].
*447 On September 11, 2015, Ms. Sirenko sought relief pursuant to La. R.S. 46:2131, et seq[3] She claimed that she had acted in self-defense during the altercation on August 21, and that Mr. Munger had-abused her. Subsequent to filing her first petition, Ms. Sirenko filed two additional petitions.[4] In the subsequent petitions, Ms. Sirenko set forth additional instances of abuse, both in the United States and'abroad.
After numerous continuances, the trial court began a trial on the merits of all the petitions on March 21, 2016. Mr. Munger presented his case first. He'testified that on August 21, 2015, he arrived home[5] seeking to celebrate his first paycheck with his wife, son and mother. He testified that Ms. Sirenko did not want to go out to dinner. The couple then discussed plans for their son’s birthday party. Mr. Munger wished to invite his 12-year-old daughter from a previous relationship, his sister-and her family and his mother. Ms. Sirenko was opposed to planning a party, and specifically did not want Mr. Munger’s daughter to be invited. According to Mr. Mun-ger, Ms. Sirenko began typing a text to his daughter | ¡^threatening to drag her out of the party by her hair and to kill her if she attended the party. Not wanting Ms. Sir-enko to send such a message to his daughter, he claims-that he grabbed the phone from Ms. Sirenko and held her hands to prevent her from punching and scratching him. The two fell to the sofá, with Ms. Sirenko landing on top of him. As they straggled, Ms. Sirenko bit him on his chest near his armpit. When he saw that he was bleeding from the bite, he drove himself to an urgent care -facility for treatment. He testified that he consulted with his mother and sister, an attorney, and decided to call the Orleans Parish Coroner to obtain a protective order. After he had the protective order in hand, he called the police (about two hours after incident). He admitted that he never looked for Ms. Sirenko, who had left the apartment with their son.
When the police arrived at the apartment building, they went upstairs and interviewed Mr. Munger. They then arrested Ms. Sirenko, who had been in the. lobby of the building with the child, and returned the boy to. Mr. Munger. Ms. Sirenko was charged .with. domestic battery and spent twenty days in jail. She subsequently pleaded nolo contendere to a. charge of disturbing the peace. On the day of her plea, a Louisiana Uniform. Abuse Protection Order was issued in Mr.. Munger’s favor for an eighteen month period.
In her case-in-chief, Ms. Sirenko testified that she had been a victim of a pattern . of abuse, beginning in Moscow, continuing in Dubai, and ending with the incident of August 21, 2015, in New Orleans. She claimed that Mr. Munger slapped her across her face while in Moscow when she asked him to help her take Reare of their son. She testified that shé called the police, but either the line was busy or no one answered. After the couple moved to Du *448 bai, she testified that Mr. Munger punched her in the mouth. She said he told her he was having a nervous breakdown, having just learned that his mother was in a serious automobile accident in New Orleans. After striking her, he picked up a large knife and held it to her throat. She ran from them apartment and called the police. When the police arrived, Mr. Mun-ger apologized for his behavior. Ms. Siren-ko testified that she forgave him and did not press charges as her injuries “were not that bad.”
Ms. Sirenko testified that after moving to New Orleans, which she believed to be for a temporary visit, Mr. Munger threatened to have her deported.[6] He repeatedly told her that the child would be awarded to him in a custody battle, as the child was a United States citizen and it would be in his best interest to remain here. Ms. Sirenko admitted that prior to the August 21, 2015, incident she continued to have sex with Mr. Munger. She testified that Mr. Mun-ger would sleep in the living room of the apartment, but would occasionally come to the bedroom to talk to her. The child always slept in the bed with her.
Ms. Sirenko testified that about a month prior to the August 21 incident, she awoke to find Mr. Munger lying on the opposite side of the bed, masturbating on his son’s face. She screamed and he jumped up from the bed, explaining to her that he would start taking his pills again for his mental disorders. She did not call |fithe police on this occasion as she testified she only wanted a quiet divorce and plane tickets for her and her son to return to Dubai.
Mr. Munger categorically denied ever abusing his wife in any way. He explained that he had consulted a psychiatrist for one visit to discuss his inability to concentrate in school and for tests.[7] The doctor prescribed Adderall, which Mr. Munger would take on an as-needed basis. He denied having any mental disorders or having told Ms. Sirenko that he did.
The trial judge gave extensive reasons for judgment on the record. She stated that she believed Ms. Sirenko to be credible, and that the incidents she related to the Court demonstrated a classic pattern of domestic abuse. She explained that Ms. Sirenko’s version of the events of August 21, 2015, was more believable, and that Ms. Sirenko had bitten Mr. Munger in self-defense. Although the judge believed that Ms. Sirenko had threatened to text Mr. Munger’s daughter, there was no proof that the text was ever delivered. The trial judge also did not believe that Mr. Munger had intended to sexually assault his son, and expressed cogent and well-considered reasons for her decision.
The trial court granted a protective order in Ms. Sirenko’s favor, prohibiting Mr. Munger from contacting her except as it relates to their son’s health, education or welfare. She awarded temporary joint custody to the parties, with Ms. Sirenko designated as the primary custodial parent. Mr. Munger was awarded unsupervised visitation two days per week and every other weekend. She assessed | fiall costs to Mr. Munger and ordered that the child’s passport be placed into the registry of the court. As both parties were unemployed at the time, the court ordered Mr. Munger to pay $233 per month child support pending further orders, and to provide the court with proof of insurance for the child. Ms. Sirenko was ordered to post a bond of *449 $500 to insure that she would not leave the jurisdiction with the child. Last, the trial court dismissed Mr. Munger’s petition for protection finding that he did not meet the criteria for issuing the order, but had sought the order in an attempt to prevent Ms. Sirenko from fleeing with the child.
DISCUSSION:
Protective orders are issued in domestic violence matters pursuant to the Domestic Abuse Assistance Act, La. R.S. 46:2131, et seq. The purpose of the law is to provide relief to victims of domestic violence by-establishing a civil remedy for domestic violence that affords the victim(s) immediate and easily accessible protection. Dvilansky v. Correu, 16-279, p. 6 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, 689, writ denied, 16-2081 (La. 1/9/17), 214 So.3d 871; Alfonso v. Cooper, 14-0145, p. 13 (La.App. 4 Cir. 7/16/14), 146 So.3d 796, 805. La. R.S. 46:2135 and 46:2136 require that there be “good cause shown” for the issuance of a protective order. “Good cause shown” is defined in La. R.S. 46:2135 as a showing of “immediate and present danger of abuse.” Additionally, the definition of domestic abuse includes, but is not limited to, physical or sexual abuse or any offense against the person, physical or non-physical, as defined in the Louisiana Criminal Code, except negligent injury and defamation, committed by one family or |7household member against another. La. R.S. 46:2132(3). The court may grant a protective order to bring about a cessation of abuse of a party. La. R.S. 46:2136 A.
Louisiana courts have held that the definition of domestic abuse in La. R.S. 46:2132(3) does not include nonphysical acts, such as general harassment and family arguments, if those acts do not rise to the level of physical or sexual abuse in violation of the criminal code, or an offense against a person. Dvilansky, 16-0279, p. 7, 204 So.3d at 689; Lee v. Smith, 08-455, p. 9 (La.App. 5 Cir. 12/16/08), 4 So.3d 100, 106; also see Rouyea v. Rouyea, 00-2613, p.5 (La.App. 1 Cir. 3/28/01), 808 So.2d 558, 561.
An appellate court reviews domestic protective orders for abuse of discretion. Dvilansky, 16-0279, p. 7, 204 So.3d at 689; Alfonso, 14-0145, p. 13, 146 So.3d at 805. Moreover, the standard of review applicable to fact findings of the trial court has been clearly enunciated by our Supreme Court in Rabalais v. Nash, 06-0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657:
It is well-settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong .... To reverse a fact-finder’s determination, the appellate court must find from the record a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Where the [fact-finder’s] findings are reasonable, in light of the record reviewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court’s ruling is manifestly erroneous, or clearly wrong.
| sIn matters of credibility, an appellate court must give great deference to the findings of the trier-of-fact. Franz v. First Bank Sys., Inc., 03-0448, p. 9 (La. App. 4 Cir. 2/11/04), 868 So.2d 155, 162 (citing Rosell v. ESCO, 549 So.2d 840 (La. 1989)). The trial court is in the best position to view the demeanor and mannerisms of the witnesses. Id. When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of *450 fact made by the trial court are not to be disturbed. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882-83 (La. 1993).
In his first assignment of error, Mr. Munger argues that the trial court was manifestly erroneous in granting a protective order to Ms. Sirenko pursuant to La. R.S. 46:2131, et seq. In support of his argument, he makes several arguments concerning the credibility of Ms. Sirenko. In particular,. he points to testimony in which she admits to making a false claim of abuse in an attempt to manipulate Mr, Munger. He argues that this testimony alone indicates that Ms. Sirenko is not credible,- and that the .trial court erred, in believing her version of events. He also argues that her version of the events that occurred on August 21, 2015, should not be believed and is not supported by the record.
Our review of the record indicates that the trial judge was thorough in her deliberations. The judge explained why she believed Ms. Sirenko’s testimony, and commented that the events related by Ms. Sirenko were indicative of a classic pattern of abuse,-including the victim’s reactions to the abuse. The judge |sexamined- the pictures submitted into evidence[8] and determined that the bruises to Ms. Sirenko’s arms, legs and neck were consistent with her testimony, Mr. Munger argues that if Ms. Sirenko’s story is to be believed, she should have had bruises on the front of her body. However, the judge opined that the bruises to the backs of her limbs could have been caused by being pushed down onto the sofa. As stated above, the trial judge observed the demeanor and mannerisms of the witnesses, and was in the better position to judge credibility. As all of Mr. Munger’s arguments are based on the credibility determinations of the trial court,' we cannot say that the trial court was manifestly erroneous in its findings.
Mr. Munger also argues that the trial court erred in not admitting , into evidence a letter from the Office of Community Service relative to a report of abuse of a child in his care. The letter does not contain any reference to the facts of the complaint,-by whom the complaint was made, or what child was involved. We fail to see the relevance of the letter, and therefore agree with the trial court’s ruling.
In .his second assignment of error, Mr. Munger complains that the trial .court was manifestly erroneous in dismissing his petition for protection from abuse. Pursuant to the Domestic Abuse Assistance Act, La. R.S, 46:2131, et.seq,, a trial court’s decision to deny a petition for protection from abuse is reversible only upon a showing of abuse of discretion. Shaw v. Young, 15-0974, p. 4 (La.App. 4 Cir. 8/17/16), 199 So.3d 1180, 1183.
| inThe’record supports the trial court’s finding that Mr. Munger was the aggressor. The trial court heard the testimony and reviewed the evidence. Our standard of review does not allow this Court to substitute our judgment for that of the trial court if the record supports the trial court’s findings. Stobart, supra at 882-83.
In his last assignment of error, Mr, Munger argues that the trial court erred in assessing all costs of court to him. Louisiana Revised Statute 46:2136.1 provides that the trial court shall assess.court costs and attorney fees to the perpetrator of domestic violence. As we find no error in the trial court’s findings of fact, i.e., Mr. *451 Munger was the aggressor, we likewise find no error in the assessment of costs.
Accordingly, for the reasons set forth above, we affirm the judgment of the trial court.
AFFIRMED

. Nikolas was bom in Moscow, Russia, on August 17, 2014. He is a U.S, citizen, as is Mr. Munger. Ms. Sirenko is a citizen of Kazakhstan.

. Harmony House (a subsidiary service of Kingsley House) addresses the needs of parents, children, the courts and the communities of New Orleans and the surrounding *447 areas by providing a safe,- supportive, environment for supervised visitation and monitored exchanges with equal regard' for parent and child safely.

.The purpose of the Domestic-Abuse Assistance Act is to provide relief to victims of domestic violence by establishing a civil remedy for domestic violence that affords the victims immediate and easily accessible protection. Dvilansky v. Correu, 16-279 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, writ denied, 16-2081 (La. 1/9/17), 214 So.3d 871.

. Protection orders pursuant to La.R.S. 46:2131, et seq., expire after thirty days. Dvilansky v. Correu, 16-279 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, writ denied, 16-2081 (La. 1/9/17), 214 So.3d 871.

. The parties were living with Mr. Munger⅛ mother in her apartment.

. Ms. Sirenko was in this country on a tourist visa, obtained by Mr. Munger as her sponsor.

. At the time of trial, Mr. Munger was unemployed and was enrolled in school to obtain ■ either an M.B.A. or a second baccalaureate degree.

. The pictures contained in the record aré totally black. The only picture that is discern-able is of the bite to Mr. Munger's armpit.