Judge Tiffany G. Chase
Devin Tipton (hereinafter "Mr. Tipton"), seeks review of the trial court's March 13, 2018 judgment granting a protective order against him. After consideration of the record before this Court, and the applicable law, we convert Mr. Tipton's appeal to a writ; grant the writ; deny relief and affirm the judgment of the trial court.
Factual and Procedural History
Jammall Breaux (hereinafter "Mr. Breaux") and Youlika Charles-Tipton (hereinafter "Mrs. Tipton") are the parents of a minor child, J.B.[1] Mrs. Tipton is married to Mr. Tipton, making him J.B.'s step-father. J.B. reportedly recounted several incidents involving his mother and step-father to Mr. Breaux and to staff at his school.
On February 7, 2018, Mr. Breaux filed a petition seeking a temporary restraining order, pursuant to La. R.S. § 46:2131 et seq. , on behalf of his son, J.B.[2] In Mr. Breaux's petition, he alleged J.B. was subjected to violent behavior, including threats of violence by Mr. Tipton. Mr. Breaux sought an ex parte temporary restraining order to prevent Mr. Tipton from abusing, harassing or threatening J.B., and from going within one hundred yards of J.B.'s residence or school. The judge signed the temporary restraining order, and Mr. Tipton was ordered to appear and demonstrate why the restraining order should not be made a protective order.
On March 13, 2018, the trial court heard testimony from both Mr. Breaux and Mr. Tipton on the protective order. Mr. Breaux testified that his son related to him multiple concerning incidents involving J.B., Mr. Tipton and Mrs. Tipton. By all accounts, Mr. Tipton and Mrs. Tipton had a presumably tempestuous relationship. After disputes between Mr. Tipton and his wife, Mrs. Tipton would leave their marital home in Mississippi, late at night, taking J.B. and his half-sister back to Louisiana. Mr. Breaux expressed concern for J.B.'s safety, reasoning that frequently driving long distances, upset, and late at night with small children, was hazardous.
According to Mr. Breaux, these domestic disputes caused J.B.'s education to suffer and resulted in excessive absences. He testified that J.B. would return to Louisiana, only for his mother to remove him from school in Louisiana when she returned to Mr. Tipton in Mississippi. Mr. Breaux recounted an instance in February 2017 where the Tiptons attempted to permanently remove J.B. from his school in Louisiana. As a result, J.B. expressed a fear of Mr. Tipton to his teachers. In order to neutralize the situation, school officials contacted law enforcement, who responded *432 to the scene and issued a report. Eventually, the Tiptons left the school without J.B. A social worker spoke with J.B., as it was evident he experienced problems dealing with the enormity of the situation. Mr. Breaux testified J.B. was often upset and needed comforting as a result of these conflicting situations. While Mr. Breaux acknowledged that J.B. missed his mother and half-sister, that sentiment was outweighed by his fear of Mr. Tipton.
J.B. consistently reported to Mr. Breaux a turbulent environment while in Mr. Tipton's home and specifically pointed out Mr. Tipton's violent acts against his mother. J.B. recounted witnessing Mr. Tipton threatening to kill his mother while holding a gun to her head. On another occasion, J.B. reported to his father that Mr. Tipton threatened Mrs. Tipton with a knife in front of J.B. and his half-sister. Additionally, J.B. maintained that Mr. Tipton was also physically violent with him. Mr. Breaux expressed profound concern that Mr. Tipton "whipped" J.B. on more than one occasion despite Mr. Breaux's opposition to corporal punishment. Overall, Mr. Breaux expressed concerns about the Tiptons' relationship; rumors that Mr. Tipton had been arrested for domestic violence; and how these incidents affected J.B.'s health and safety.
Conversely, Mr. Tipton testified about his relationship with Mrs. Tipton, insisting he and Mrs. Tipton never fought in front of J.B. While he acknowledged he and his wife underwent several separations, including a yearlong break-up, he maintained that Mrs. Tipton had never left the home they shared, with J.B, in an effort to escape him. During Mr. Tipton's testimony, he admitted the incident at J.B.'s school occurred. However, Mr. Tipton believed that J.B. was coached to tell school officials that he was fearful of his step-father. Mr. Tipton admitted he owned weapons, but he denied ever brandishing them in a violent manner. He did not deny that he "whipped" J.B.
At the conclusion of the hearing, the trial court opined that Mr. Breaux's intention was to protect his minor child. Based upon the testimony and evidence presented, the trial court expressed concern for J.B.'s safety while in Mr. Tipton's care. Specifically, testimony by Mr. Breaux established that J.B. reported alarming incidents involving Mr. Tipton to his father, his school and a social worker. The trial court granted a six month protective order, "to bring about a cessation of domestic abuse ... or the threat or danger thereof, to [J.B.]." La. R.S. § 46:2136(A). We now consider Mr. Tipton's arguments. Mr. Breaux has not filed a brief in response.
Appellate Jurisdiction
An appellate court has an independent duty to consider whether it has subject matter jurisdiction over the matter. See Torregano v. Imperium Builders S., LLC , 2016-0644 (La.App. 4 Cir. 2/15/17), 212 So.3d 638. In order to properly perfect an appeal, three procedural elements are mandated: "(1) a motion or petition for appeal, (2) an order of appeal, and (3) notice of appeal." Id. , 16-0644, p. 4, 212 So.3d at 641. An appellate court's jurisdiction attaches only once the order of appeal is granted by the trial court. Id. , 16-0644, p. 7, 212 So.3d at 642.
Mr. Tipton timely filed a motion for appeal, along with a notice of appeal several days later. However, no signed order granting the appeal and setting a return date is contained within the record. Therefore, the appeal was not properly perfected.
Although there is no signed order, under appropriate circumstances, this Court will exercise its supervisory jurisdiction *433 to convert an appeal to an application for supervisory writ. Joseph v. Wasserman, 2017-0603, p. 8 (La.App. 4 Cir. 1/10/18), 237 So.3d 14, 20. In order to properly convert an appeal to a supervisory writ, the appeal must be filed within the applicable thirty-day period. Id. The motion for appeal in this case was filed within the thirty-day period allowed for an application for supervisory writ. In the interest of promoting prompt resolution and fundamental fairness, we exercise our discretion and convert Mr. Tipton's appeal to an application for supervisory writ. Id.
Standard of Review
Domestic protective orders are reviewed for an abuse of discretion. Munger v. Sirenko , 2016-0778, p. 7 (La.App. 4 Cir. 7/12/17), 224 So.3d 445, 449. A trial court's findings of fact will only be set aside if it is clearly wrong or there is manifest error. Id. An appellate court gives great deference to the finder of fact in credibility determinations, as the trial court has the opportunity to observe the witnesses conduct and composure during their testimony. Id. , 16-0778, p. 8, 224 So.3d at 449. "When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed." Id. , 16-0778, p. 8, 224 So.3d at 449-50.
Discussion
The sole issue before this Court is whether the trial court erred in granting a protective order against Mr. Tipton. On appeal, Mr. Tipton argues Mr. Breaux's testimony, regarding J.B.'s allegations, is not credible and stresses that Mr. Breaux failed to timely raise any concerns regarding abuse. Mr. Tipton contends the hearsay testimony that he physically and verbally abused J.B. constitutes insufficient evidence to support the issuance of a protective order.
The Domestic Abuse Assistance Act, La. R.S. § 46:2131, et seq. , governs the issuance of protective orders in matters involving domestic violence. According to La. R.S. § 46:2131, the purpose of the statute is "to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." La. R.S. § 46:2136(A) provides that "[t]he court may grant any protective order or approve any consent agreement to bring about a cessation of domestic abuse as defined in [La.] R.S.[§] 46:2132, or the threat or danger thereof, to a party, any minor children, or any person alleged to be incompetent." Under La. R.S. § 46:2135(B), Mr. Breaux bears the burden of proof that domestic violence occurred against J.B., by a preponderance of the evidence.
The provision relevant to the case sub judice is contained within La. R.S. § 46:2135, which provides that "immediate and present danger of [domestic] abuse ... constitute[s] good cause [for the grant of a protective order]." Domestic abuse is defined to include, "but is not limited to[,] physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." La. R.S. § 46:2132. Thus, there must be evidence that acts by Mr. Tipton against J.B. necessitated a protective order.
First, Mr. Tipton argues Mr. Breaux's testimony is not credible for several reasons, which include: the allegations of domestic violence were not made until over a year after they occurred, Mr. Breaux had ulterior motives for seeking a protective order and Mr. Breaux was simply untruthful.
*434 Mr. Tipton points out that Mr. Breaux had no urgency in bringing charges of domestic violence, proposing this evidences a lack of legitimacy. Mr. Tipton suggests the protective order is merely an attempt by Mr. Breaux to avoid paying child support by obtaining custody. In support of his effort to gain custody, Mr. Tipton contends Mr. Breaux simply made up the story regarding the gun.
In making the credibility determination that Mr. Breaux's testimony was more credible than that of Mr. Tipton, the trial court determined that the evidence was sufficient to find that Mr. Tipton violated the Domestic Abuse Assistance Act in his treatment of J.B. Mr. Tipton questions why Mr. Breaux delayed reporting the incidents of abuse, suggesting this delay made the allegations less credible. However, the alleged abuse itself is not required to be recent in order to merit a grant of a protective order. La. R.S. § 46:2135(A). Further, the trial court is mandated to consider past history of threats or abuse in determining whether to grant a protective order. Id. While conflicting evidence was presented, the trial court had the benefit of hearing the testimony of both witnesses and making credibility determinations. Mr. Tipton maintained he never argued with Mrs. Tipton or displayed a gun, but this claim was rejected by the trial court. The trial court likewise rejected Mr. Tipton's assertions that Mr. Breaux was simply lying to the court in his direct testimony. If the record before this Court supports the findings of the trial court, "[o]ur standard of review does not allow this Court to substitute our judgment for that of the trial court." Munger , p. 10, 16-0778, 224 So.3d at 450. Further, we find the credibility determinations of the trial court are well supported. The trial court was in the best posture to assess the credibility of the witnesses. In this evaluation, the trial court determined Mr. Breaux to be more credible, thus entered a protective order. Evidence in the record supported a determination that Mr. Tipton's actions presented an "immediate and present danger of abuse" as it related to J.B. La. R.S. § 46:2135(A).
Finally, Mr. Tipton contends there is only hearsay testimony that he physically abused or committed any other criminal offense toward J.B. While Mr. Tipton argues on appeal that only hearsay testimony supports the trial court's protective order, we disagree. A review of the record demonstrates that the trial court completed a comprehensive review of the evidence before granting the protective order. In support of the protective order, there was uncontested evidence that Mr. Tipton "whipped" J.B. on several occasions, without Mr. Breaux's knowledge or permission. The trial court also noted school officials contacted Mr. Breaux and law enforcement in February 2017, when the Tiptons attempted to remove J.B. from his school. During this incident, J.B. expressed concern for his safety in leaving with Mr. Tipton, and a police report was filed as a result. Mr. Tipton does not dispute this incident occurred.
We find that the actions of Mr. Tipton, in threatening Mrs. Tipton with weapons, whipping J.B., and attempting to remove J.B. from school, which resulted in a police report, constitute domestic abuse within the meaning of the statute. The evidence before this Court does not support Mr. Tipton's contentions. Out of concern for the minor child's safety, the trial court granted a protective order. We find no abuse of discretion in the trial court's issuance of a protective order.
Conclusion
We find no abuse of discretion in the trial court's determination that Mr. Breaux presented sufficient proof to obtain the *435 protective order for J.B. The trial court's findings are supported by the evidence and the law. Accordingly, for the reasons set forth above, we affirm the trial court's issuance of the protective order.
APPEAL CONVERTED TO WRIT; WRIT GRANTED; RELIEF DENIED; JUDGMENT AFFIRMED

In this opinion, the initials of the minor child are used to protect and maintain the privacy of the minor child involved, as is set forth in Rule 5-2 of the Uniform Rules of Court for the Courts of Appeal.

Under the Domestic Abuse Assistance Act, La. R.S. § 46:2132, stepparents and stepchildren are included in the definition of family member.