Judge Paula A. Brown
This matter arises out of petitions for protection from abuse filed in Civil District *930 Court for the Parish of Orleans ("civil district court") and in Orleans Parish Juvenile Court ("juvenile court"). Appellant, Eleanor Dymond ("Ms. Dymond"), appeals the juvenile court's August 23, 2018 judgment which denied her motion to dismiss for lack of subject matter jurisdiction and granted the petition for protection from abuse filed by Appellee, Christian Culotta ("Mr. Culotta"). For the reasons that follow, we affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
Ms. Dymond and Mr. Culotta are the parents of two minor children, C.D, born July 12, 2012, and C.D., born July 7, 2013 (collectively, "the minor children"). Ms. Dymond and Mr. Culotta never married.
In December 2013, Ms. Dymond filed a petition for custody of the minor children in civil district court. On October 6, 2016, the district court signed a stipulated consent judgment ("Consent Judgment"). The parties agreed to joint custody. Primarily, Ms. Dymond had physical custody of the minor children during the school week and Mr. Culotta had physical custody on most weekends. The Consent Judgment also contained a proviso that prohibited Antoine Saacks, III ("Mr. Saacks")[1] -Ms. Dymond's boyfriend at that time-from being in the presence of the minor children.
On April 23 2018, Mr. Culotta, appearing pro se, filed a petition for protection from abuse in civil district court (the "CDC Petition")[2] pursuant to the Domestic Abuse Assistance statues promulgated in La. R.S. 46:2131 et seq.[3] Mr. Culotta alleged, in part, that Mr. Saacks and Ms. Dymond engaged in physical altercations with one another; the minor children witnessed these acts; Ms. Dymond allowed Mr. Saacks to spank the youngest daughter; and Ms. Dymond had violated the Consent Judgment by permitting Mr. Saacks to be around the children. Mr. Culotta obtained an ex parte Temporary Restraining Order ("TRO"), which granted Mr. Culotta immediate temporary custody of the children, pending a show cause hearing on the merits on May 22, 2018.
On May 17, 2018, Mr. Culotta, through counsel, filed a supplemental petition and amended petition for protection from abuse (the "Amended Petition") in civil district court. In contrast to the original CDC Petition, the Amended Petition was filed under La. Ch.C. art. 1564, et seq. ,[4] the *931 Children's Code Domestic Abuse Assistance Chapter. Mr. Culotta alleged in the Amended Petition that Ms. Dymond allowed Mr. Saacks to physically abuse the youngest child, and to physically harm and discipline the minor children. Mr. Culotta also alleged the Department of Children and Family Services ("DCFS") had launched an on-going investigation into these abuse allegations.
On May 22, 2018, Ms. Dymond and Mr. Culotta appeared in civil district court on a motion to clarify, enforce, and/or modify consent judgment ("Motion to Modify"), filed by appointed counsel on behalf of the minor children. Mr. Culotta's TRO was also fixed on the same day.[5] During the pre-trial conference on both matters, Mr. Culotta's counsel informed the district court that Mr. Culotta intended to seek relief on his CDC and Amended Petitions in juvenile court as she did not believe civil district court had jurisdiction over the allegations raised in the Amended Petition.
Following the conference, the district court conducted a hearing only on the Motion to Modify. The district court, after hearing argument of counsel, ordered the removal of the provision within the Consent Judgment which barred Mr. Saacks from being in the presence of the minor children.[6]
As to the TRO, again, counsel for Mr. Culotta urged that his petitions be transferred to juvenile court due to civil district court's lack of jurisdiction. Thereafter, on May 29, 2018, the district court denied Mr. Culotta's proposed judgment to transfer the CDC and Amended Petitions to juvenile court. The district court judge also wrote the word "moot" on the Amended Petition as it pertained to the order for Ms. Dymond to show cause on May 22, 2018 why the TRO should not be made a protective order. The TRO expired on May 22, 2018 at 11:59 p.m.
On May 25, 2018, three days after the expiration of the TRO, Mr. Culotta filed a petition for protection from abuse in juvenile court (the "JC Petition") pursuant to La. Ch.C. art. 1564, et seq. The JC Petition raised essentially the same allegations as pled in the Amended Petition. In response to the JC Petition, Ms. Dymond filed a motion to dismiss based on exceptions of lis pendens and res judicata . On June 19, 2018, after a hearing on the exceptions, the juvenile court denied the motion to dismiss and the exceptions.[7]
On July 11, 2018, the juvenile court conducted a hearing on the merits of the JC Petition. The juvenile court took the matter under advisement and allowed the parties to submit post-trial memoranda. Ms. Dymond's post-trial memorandum included a motion to dismiss for lack of jurisdiction pursuant to La. Ch. C. art. 303(9).[8] In his opposition, Mr. Culotta filed a motion to *932 strike Ms. Dymond's post-trial memorandum.
Following an August 23, 2018 hearing on the post-trial motions, the juvenile court denied Ms. Dymond's motion to dismiss for lack of jurisdiction and granted Mr. Culotta's JC Petition. The protective order-made effective through January 23, 2019-granted Mr. Culotta temporary custody of the children. Ms. Dymond was awarded unsupervised visitation rights and physical custody on most weekends, with the caveat that Mr. Saacks was not to be present when Ms. Dymond exercised her visitation/custodial rights.
Ms. Dymond timely filed a devolutive appeal from the judgment.
DISCUSSION
Ms. Dymond's assignments of error maintain the juvenile court erred in refusing to dismiss the JC Petition on the grounds of lis pendens ;[9] the juvenile court lacked jurisdiction over the JC Petition; and the evidence was insufficient to support a protective order.
Lis Pendens
In accord with La. C.C.P. art. 929(A),[10] Ms. Dymond's exception of lis pendens was tried and decided on June 29, 2018-in advance of the trial on merits on the JC Petition. As noted, supra , Ms. Dymond did not seek appellate review of the denial of her lis pendens exception. The only judgment appealed by Ms. Dymond is the juvenile court judgment dated August 23, 2018. That judgment does not address the exception of lis pendens . Therefore, the validity of the juvenile court's denial of the exception of lis pendens is not properly before this Court in this appeal. Consequently, our review is limited to whether the juvenile court retained subject matter jurisdiction to grant the JC Petition and whether the evidence supported the issuance of a protective order.
Jurisdiction
"Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La. C.C.P. art. 2. "A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void." La. C.C.P. art. 3.
A district court shall have original jurisdiction of all civil and criminal matters unless otherwise authorized by the Louisiana Constitution. LSA-Const. Art. 5, § 16 (A). Article V, § 18 of the Louisiana Constitution provides that "[n]otwithstanding any contrary provision of § 16 of this Article, juvenile and family courts shall have jurisdiction as provided by law."
While a district court's factual findings on appellate review are subject to the manifest error standard of appellate review, jurisdiction itself is a question of law subject to de novo review. See Law Office of Paul C. Miniclier, PLC v. Louisiana State Bar Ass'n , 2014-1162, p. 4 (La. App. 4 Cir. 5/27/15), 171 So.3d 1013, 1014 (citation omitted).
Louisiana provides two parallel statutory schemes under which litigants may bring domestic abuse proceedings- *933 La. R.S. 46:2131, et. seq. in the district courts and La. Ch.C. art. 1564, et. seq. for courts exercising juvenile jurisdiction. In the case sub judice , Ms. Dymond argues the juvenile court lacked subject matter jurisdiction to hear Mr. Culotta's JC Petition because he had initially brought the CDC Petition. She iterates that although the juvenile court ordinarily has exclusive original jurisdiction over children and minors, La. Ch. C. art. 303(9) expressly provides a jurisdictional exception for proceedings initially brought in district court pursuant to La. R.S. 46:2131, et seq. , as was done in the present case. In support, Ms. Dymond relies on Martin ex rel. K.M. v. Harrison , 37, 891 (La. App. 2 Cir. 9/26/03), 855 So.2d 950.
In Martin ex rel. K.M. , the Second Circuit found that the juvenile court lacked jurisdiction over the father's petition for protection from abuse where the father had previously filed domestic abuse assistance proceedings based on the same allegations in the district court pursuant to La. R.S. 46:2131, et seq. The facts indicated the father filed his juvenile court petition for protection from abuse after he became dissatisfied with a ruling from the district court. In deciding that La. Ch.C. art. 303(9) had deprived the juvenile court of jurisdiction, the Second Circuit opined that one of the purposes of Article 303(9) is to prevent "forum shopping" by a litigant dissatisfied with a ruling in the district court to then turn to the juvenile court to obtain a more favorable result. Martin ex rel. K.M. , 37, 891, p. 6, 855 So.2d at 953.
Upon our de novo review of the record, we find the facts of this case compel a different outcome than the result reached in Martin ex. rel. K.M. We initially note that the record does not show Mr. Culotta engaged in forum shopping because of dissatisfaction with any civil district court judgment. Indeed, the district court did not conduct a hearing nor did it render a decision on the merits of his pro se CDC Petition or the Amended Petition. Moreover, the record shows Mr. Culotta's counsel brought the domestic abuse proceedings under the Children's Code due to her legitimate concern that Ms. Dymond's boyfriend did not meet the definition of a family member under La. R.S. 46:2132 ; which, if true, could preclude Mr. Culotta from seeking relief under that statute.
Next, and most importantly, at the time the JC Petition was filed-May 25, 2018-the CDC Petition was no longer pending. The TRO, which was only effective through May 22, 2018, had expired. On May 29, 2018, the district court had marked as "moot" the need to conduct the May 22, 2018 show cause hearing on the TRO. Therefore, Mr. Culotta had to file another, separate petition for protection from abuse to regain the relief and protection that had been provided to his children by the expired TRO, pending a show cause hearing on the merits. This Court knows of no statutory authority that would have required Mr. Culotta to bring a subsequent petition for protection from abuse proceeding in civil district court when there was no decision rendered on the merits of the first CDC Petition.
We find the La. Ch.C. art. 303(9) jurisdictional exception does not permanently divest the juvenile court of jurisdiction over a domestic abuse action initially filed under La. R.S. 46:2131, et seq. when that action is no longer pending. The stated purpose of both La. R.S. 46:2131 and La. Ch.C. art. 1564 is to give domestic abuse victims remedies which afford "immediate and easily accessible protection." Mr. Culotta's election to bring his petition for protection from abuse pursuant to the Children's Code comported with the stated purpose of either domestic abuse assistance statutes. Consequently, Mr. Culotta *934 had the right to bring his petition in the venue he believed had jurisdiction to afford his children "immediate and easily accessible protection" from abuse.
Based upon our de novo review of the facts and circumstances of this case, the statutory exception provided by La. Ch.C. art. 303(9) did not apply to deprive the juvenile court of jurisdiction. Therefore, the juvenile court properly denied Ms. Dymond's motion to dismiss.
Sufficiency of the Evidence
Ms. Dymond argues that the evidence was insufficient to support a protective order.
Our jurisprudence is well-settled that the standard for an appellate court to review a domestic protective order is abuse of discretion. Vallius v. Vallius , 2010-0870, p. 3 (La. App. 4 Cir. 12/8/10), 53 So.3d 655, 657 (citations omitted). To reverse a district court's determination in a protection from abuse proceeding, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. See Munger v. Sirenko , 2016-0778, p. 7 (La. App. 4 Cir. 7/12/17), 224 So.3d 445, 449. The issuance of a protective order under the Children's Code requires proof by a preponderance of the evidence. See La. Ch. C. art. 1569(B) and (D).[11]
At the trial, Ms. Dymond, Rachel Cullota (Mr. Culotta's wife), Mr. Culotta, Peter Dymond (Ms. Dymond's brother), and Shirley Dymond (Ms. Dymond's mother) were called to testify.[12] The juvenile court also interviewed the minor children.
On cross-examination, Ms. Dymond testified that she had obtained a protective order against Mr. Saacks less than a month before the scheduled hearing on the JC Petition.[13] She admitted that the request for the protective order included allegations of physical abuse. Ms. Dymond acknowledged that Mr. Saacks had kicked her while she was pregnant with their son and that the minor children were present in the house when the altercation happened. She declared, however, that the minor children did not actually witness the altercation. Ms. Dymond also described an incident where Mr. Saacks kicked her while she held their one-month old son. Ms. Dymond admitted she was not truthful during the civil district court Motion to Modify hearing when she denied physical abuse at the hands of Dr. Saacks. She testified that she had a two-year long period of abuse with Mr. Saacks, but urged that the abuse was not all "physical."
On examination by her counsel, Ms. Dymond testified that she did not currently live with Mr. Saacks; had no intention of resuming their relationship; and denied that Mr. Saacks had ever physically abused the minor children. On re-examination, Ms. Dymond admitted that she had moved in with Mr. Saacks in January 2018, notwithstanding the October 2017 Consent Judgment that prohibited Mr. Saacks from being in the presence of the minor children. Ms. Dymond also said she believed *935 children who are present or in the vicinity of domestic violence are subject to abuse.
Rachel Culotta ("Mrs. Culotta") testified that the minor children were the subject of a DCFS investigation. She said the minor children told her that they had witnessed countless incidents of physical abuse between Ms. Dymond and Mr. Saacks, including a stabbing. On cross-examination, Mrs. Culotta said she did not have personal evidence of abuse outside of incidents told to her by the minor children.
Mr. Culotta testified that he had no additional evidence to introduce in support of the JC Petition, other than the testimony offered by Mrs. Culotta.
On direct examination, Peter Dymond ("Mr. Dymond") testified that he had never witnessed his sister allowing Mr. Saacks to abuse the minor children. He admitted on cross-examination that he had told Mr. Culotta that he was concerned about his sister's relationship with Mr. Saacks after learning she and Mr. Saacks had a physical altercation. He also testified he had recently become concerned about the minor children's welfare in their interactions with Mr. Saacks.
Shirley Dymond ("Mother Dymond") testified that Ms. Dymond and the minor children presently resided with her, where she believed they were safe. She said she was not aware of any abuse of the minor children and had only observed positive interaction between Mr. Saacks and the minor children. On cross-examination, however, Mother Dymond did recall an incident where she had to retrieve the minor children when Ms. Dymond had been arrested after an altercation with Mr. Saacks.
Ms. Dymond argues Mr. Culotta was not entitled to a protective order on behalf of the minor children because he failed to prove that either Mr. Saacks or Ms. Dymond had physically abused the minor children or that the children were in any danger of on-going abuse. In support, Ms. Dymond cited her testimony wherein she testified that she had filed a protective order against Mr. Saacks; she had moved out of the residence they shared; and her assertion that she would not reconcile with Mr. Saacks.
Contrariwise, Mr. Culotta argues the evidence demonstrated the juvenile court properly issued the protective order. Mr. Culotta cites Ms. Dymond's verified domestic abuse complaint against Mr. Saacks which detailed a long history of domestic violence between Ms. Dymond and Mr. Saacks, including an incident where the minor children were present in the residence. Mr. Culotta emphasizes that Ms. Dymond permitted Mr. Saacks to interact with the minor children at a time when their Consent Judgment prohibited such contact and Ms. Dymond's failure to acknowledge the physical abuse between she and Mr. Saacks at the May 22, 2017 Motion to Modify hearing in civil district court. Mr. Culotta also maintains that Mrs. Culotta's testimony supported that the minor children witnessed physical violence between Ms. Dymond and Mr. Saacks and were harmed when they intervened to break up the fights.
Upon our careful review of the testimony and evidence presented, we find that a reasonable factual basis exists for the juvenile court's decision to issue a protective order. In addition to hearing the testimony of numerous adult witnesses who testified and weighing their credibility, the juvenile court also interviewed the minor children. The juvenile court evaluated documentary evidence, such as Ms. Dymond's protective order against Mr. Saacks and the transcript of Ms. Dymond's domestic abuse testimony from the Motion to Modify hearing. The totality of the evidence provided *936 proof by a preponderance of the evidence sufficient to rule in favor of Mr. Culotta. Accordingly, the juvenile court did not abuse its discretion in granting the protective order.
CONCLUSION
For the foregoing reasons, we find the juvenile court had subject matter jurisdiction and affirm the judgment granting the protective order.
AFFIRMED
JENKINS, J., DISSENTS WITH REASONS

Mr. Saacks is a doctor. He is alternately referenced in the record as "Dr. Saacks" or "Mr. Saacks." For purposes of this opinion, he will be referenced as "Mr. Saacks."

The CDC Petition was assigned to Domestic Relations Section 1, Division "K."

La. R.S. 46: 2131provides:
The purpose of this Part is to recognize and address the complex legal and social problems created by domestic violence. The legislature finds that existing laws which regulate the dissolution of marriage do not adequately address problems of protecting and assisting the victims of domestic abuse. The legislature further finds that previous societal attitudes have been reflected in the policies and practices of law enforcement agencies and prosecutors which have resulted in different treatment of crimes occurring between family members, household members, or dating partners and those occurring between strangers. It is the intent of the legislature to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection. Furthermore, it is the intent of the legislature that the official response of law enforcement agencies to cases of domestic violence shall stress the enforcement of laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated.

La. Ch. C. art. 1564 states that "[t]he purpose of this Chapter is to recognize and address the complex legal and social problems created by domestic violence and to provide a civil remedy in the juvenile courts for domestic violence in homes in which children reside which will afford the victim immediate and easily accessible protection.

At some point prior to the hearing, the CDC Petition had been consolidated with the on-going custody proceedings arising out of civil district court Case No. 2013-11204, Division "K."

As will be discussed, infra , a transcript of Ms. Dymond's testimony from the May 22, 2018 hearing on the Motion to Modify reveals Ms. Dymond denied allegations of physical abuse by Mr. Saacks.

Ms. Dymond did not seek appellate review of the juvenile court's denial of the lis pendens or the res judicata exceptions.

La. Ch.C. art. 303(9) states that a court exercising juvenile jurisdiction has exclusive jurisdiction over "[a]ny special proceeding authorized by Title XV, except domestic abuse assistance proceedings brought in a district court pursuant to R.S. 46:2131 et seq. "

La. C.C.P. art. 531 provides, in part, that "[w]hen two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925."

La. C.C.P. art. 929(A) states that "[t]he declinatory exception, the dilatory, and the peremptory exception when pleaded before or in the answer shall be tried and decided in advance of the trial of the case."

Both La. Ch. C. art. 1569(B) and (D) provide, in part, that to obtain a protective order, "the petitioner must prove the allegations of abuse by a preponderance of the evidence...."

Narais Black, Mr. Saacks' former domestic partner and mother of two of his children, also testified. She testified that she obtained a protective order against Mr. Saacks in 2008. However, testimony regarding Mr. Saacks' alleged abuse of their minor children was excluded based on hearsay.

Counsel for Mr. Culotta offered a copy of the June 29, 2018 petition for protection from domestic abuse Ms. Dymond had filed against Mr. Saacks into evidence.