Judge Daniel L. Dysart
Leon Grant Hiatt, Jr., and Lauren Michelle Duhe are the parents of two sons, S.R.H. (d/o/b 4/25/07), and J.E.H. (d/o/b 4/27/10). On August 15, 2016, Mr. Hiatt filed a Petition to Establish Custody, to which Ms. Duhe responded with an Answer and Reconventional Demand and Request for Interim Visitation Schedule. A final hearing was held on February 16, 17 and 21, 2017, after which the trial court rendered judgment, awarding joint custody, with Ms. Duhe as the domiciliary parent. It is from this judgment that Mr. Hiatt appeals.
BACKGROUND:
At the time Mr. Hiatt filed his Petition to Establish Custody, the parties had been together for eleven years, living in the same home, which is owned by Mr. Hiatt. After the birth of their first child, Ms. Duhe left her employment to care for their son, and she remained out of the workforce until the younger son started school. Mr. Hiatt is a special education teacher in the St. Charles Parish school district, and works in Laplace, Louisiana. Ms. Duhe is employed as a massage therapist at a local spa. In August of 2016, Ms. Duhe moved out of the house, leaving the children in the care of Mr. Hiatt.
In his petition, Mr. Hiatt stated that he was the primary caregiver to the boys, that he taught the boys to read, that his house was the only home the boys had ever known, and that it was uniquely suited to raising children. He further claimed that Ms. Duhe suffered from depression and anxiety, and therefore, it was not in the best interest of the children for her to have custody. He admitted that both he and
Ms. Duhe loved the children, but that he was better suited to care for them during the school year.
Ms. Duhe answered the petition and reconvened against Mr. Hiatt, seeking sole custody of the children, with visitation for Mr. Hiatt. Alternatively, she sought joint custody with her being designated as the primary custodial parent. In her reconventional demand, Mr. Duhe made allegations that Mr. Hiatt had physically, emotionally *487 and mentally abused her for several years prior to the break-up. Additionally, she claimed that Mr. Hiatt abused alcohol and drugs, and was manipulating the children's affections by telling them about the court proceedings. Ms. Duhe alleged that Mr. Hiatt did not feed the children wholesome meals, sent the children to school dirty and in ill-fitting clothes, and did not supervise their homework or other school responsibilities.
On September 1, 2016, Ms. Duhe filed an Emergency Ex Parte Motion for Emergency Temporary Custody and Specified Visitation Schedule pursuant to La.C.C.P. Article 3945.[1] The trial court signed an order on September 8, 2016, granting Ms. Duhe temporary custody, with specified visitation for Mr. Hiatt. The trial court set an October 6 hearing for Mr. Hiatt to show cause why the temporary order of custody should not remain in effect until a permanent order was made effective.
A hearing on the rule for temporary custody was held on October 12, 2016. The trial court ordered that the parties be granted joint custody with Ms. Duhe designated as the domiciliary parent. A trial date for a determination of permanent custody was set for December 20, 2016.
Prior to December 20, Mr. Hiatt filed a motion to appoint a custody evaluator, and to continue the trial on the issue of permanent custody until the evaluation was completed. He also filed an ex parte motion to allow the two children to testify *488 pursuant to Watermeier.[2] Ms. Duhe opposed the motion to allow the children to testify, arguing that the court had already spoken with the eldest child before the last hearing. She also argued that the appointment of a custody evaluator would unnecessarily delay the trial.[3]
A trial did not commence on December 20, but was reset for February 17, 2017. Mr. Hiatt refiled his motion to have the children testify, which was denied. He sought review from this Court, which requested a per curiam from the trial court.
The trial court explained that it was concerned about interviewing children of such a young age. Because of these concerns, the judge explained that she decided to interview the children at their school. She gave the parties an opportunity to be present and to submit questions. Neither party attended the interview, but both submitted questions. The judge explained that the elder child became so emotionally distraught during the interview that she was forced to end it, and chose not to interview the younger child. Based on these events, the trial court, in its discretion, denied Mr. Hiatt's motion to have the children testify at trial. Finding no abuse of discretion, this Court denied Mr. Hiatt's writ application.
Following the hearing in February, but before the court rendered judgment, Ms. Duhe filed an Emergency Motion for Modification of Existing Judgment alleging that Mr. Hiatt was alienating the children against Ms. Duhe and the children's therapist, and was continuing to discuss the ongoing litigation with the children, despite the court's warnings not to do so. Ms. Duhe sought to have the court order immediate parenting classes, co-parenting classes and counseling/therapy for Mr. Hiatt. The trial court set the motion for hearing on March 23, 2017.
On March 30, 2017, the trial court rendered judgment awarding joint custody, and designating Ms. Duhe as the domiciliary parent. Mr. Hiatt was awarded physical custody every Monday and Tuesday from dismissal of school until 7 p.m., and on alternating weekends from dismissal of school on Friday until 6 p.m. on Sunday. A detailed summer and holiday schedule was set forth, with custody equaling as close to fifty percent of the year as possible to each parent. Instructions for mandatory evacuation were set forth. The parties were ordered to attend co-parenting classes, with proof of compliance reported to the court. Mr. Hiatt was ordered to participate in a parenting class at Children's Hospital. Last, the trial court set forth specific co-parenting guidelines for the parties to follow.
DISCUSSION:
Child custody decisions are reviewed under an abuse of discretion standard. Leard v. Schenker, 06-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357. Thus, rulings by a trial court in child custody matters are entitled to great weight and the rulings will not be disturbed absent a clear showing of abuse. AEB v. JBE, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761. Every child custody case must be viewed based on its own particular facts and the relationships involved, with the goal of determining the best interests of the child. Mulkey v. Mulkey, 12-2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367 ; Jaligam v. Pochampally , 16-0249, p. 6 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, 303. Further, a reviewing court may not simply substitute *489 its own findings for that of the trial court. Jaligam, 16-0249, p. 6, 206 So.3d at 303.
An award of custody is made pursuant to La. Civ. Code art. 131. La. Civ. Code art. 134 sets forth twelve non-exclusive factors for the court to consider in awarding custody, of which the trial court shall consider all relevant factors in determining the best interests of the child.[4] The trial court is not bound to a mechanical evaluation of all of the statutory factors listed in the article, but should consider each case on its own facts in light of the factors. Robertson v. Robertson, 10-926, p. 16, 64 So.3d 354, 363.
In matters of credibility, a reviewing court must give great deference to the trial court's findings. Dvilansky v. Correu, 16-0279, p. 7 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, 689. The trial court is in the best position to evaluate the demeanor and mannerisms of the witnesses. Id., 16-0279,p. 8, 204 So.3d at 690. When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed. Id., citing Stobart v. State through Dept. of Transp. and Development , 617 So.2d 880, 882-83 (La. 1993).
Mr. Hiatt's brief does not clearly set forth his assignments of error as required by Uniform Rules-Courts of Appeal 2-12.4. However, it appears that his first assignment of error relates to the interim custody order issued by the trial court. He argues that the trial court erred in not attending a case management meeting, which led to the erroneous issuance of the temporary order.
As the order of temporary custody is no longer in effect, this issue is moot.
In his second assignment of error, Mr. Hiatt argues that the trial court erred in not allowing the minor children to testify at the hearing to determine custody. Mr. Hiatt chose not to attend the interview that the trial court conducted of the elder child at his school. His allegations of error are based on his reading of the transcript of the interview. As explained herein, the trial judge was very sensitive to the emotional state of the child, and made the decision to cut the interview short.
Based on the judge's observance of the child's emotional state in a one-on-one interview, *490 we cannot say that she abused her discretion in not allowing the children to testify in open court. The trial judge was clearly in a superior position to make such a determination.
Mr. Hiatt next argues that the trial court erred in not appointing a custody evaluator. Ms. Duhe argues that the appointment of an evaluator is precluded when there have been allegations of domestic abuse, citing La. R.S. 9:364. The parties were allowed to present their arguments at a pre-trial hearing. The trial court heard evidence concerning Mr. Hiatt's manipulation of the children, encouraging them to disrespect their mother and to disregard her instructions. Further, despite warnings from the trial court to not discuss the case with the children, there was evidence presented that Mr. Hiatt had read to the children from the transcript of the Watermeier hearing.
Louisiana Revised Statute 9:331 provides that a trial court may order a custody evaluation. After hearing the evidence presented by the parties, the trial court decided that an evaluation would not benefit the parties or the court in making its ruling on custody. Based on our reading of the record, we cannot say that the trial court abused its discretion.
Mr. Hiatt argues that the trial court erred in finding Ms. Duhe to be truthful in making allegations against him of drug and alcohol use, and physical and verbal abuse.
As cited above, a trial court is in the best posture to evaluate credibility. Additionally, we note that the trial court did not state that it considered any allegations of abuse in making its decision, but rather specifically stated in its Reasons for Judgment and in open court that it found Mr. Hiatt to be manipulative and disingenuous. Thus, we cannot say that the trial court abused its discretion in its credibility determinations.
Mr. Hiatt takes exception with the trial court's Reasons for Judgment, arguing that "even a loose analysis will find them spurious." He argues that the significant time restraints with his children placed on him by the trial court, prevented him from helping the children with homework. Therefore, it was error for the trial court to hold that against him in reaching its decision. Mr. Hiatt fails to consider that he testified that he believed it more beneficial for the children to be able to "unwind" after school with at least an hour of play time before beginning any homework.
Again, the trial court heard testimony and received evidence in this case during several hearings prior to and including the hearing to make a final custody determination. We cannot say that its evaluation of that evidence and its determinations of credibility is an abuse of discretion.
Mr. Hiatt also argues that the trial court erred when it failed to order frequent and continuing contact with him. A review of the judgment belies this argument. The trial court determined that because of the parties' work schedules, Ms. Duhe was in the best position to transport the children to school each day. Based on this determination, it awarded Mr. Hiatt visitation every Monday and Tuesday from after school until 7 p.m. Additionally, he was awarded every other weekend and alternating holidays. Considering the children's ages, we cannot say that the current custody arrangement outlined by the court is an abuse of discretion.
Last, Mr. Hiatt argues that the trial court erred in ignoring several of the items required by La. Civ. Code art. 134. As stated above, trial courts are not bound to mechanical application of all of the factors listed. Rather, the trial court is bound *491 to evaluate all of the evidence presented, using the factors as a guideline, and to arrive at a fair and equitable decision. After reading all of the testimony presented in this case, we find that the trial court went above and beyond to fairly assess the facts and to make a well-reasoned judgment.
Considering the record before us, we cannot say that the trial court abused its vast discretion in awarding joint custody to the parties, with Ms. Duhe designated as the domiciliary parent. Accordingly, we affirm the judgment of the trial court.
AFFIRMED

Art. 3945 . Incidental order of temporary child custody; injunctive relief; exceptions
A. The injunctive relief afforded either party to an action for divorce or other proceeding which includes a provision for the temporary custody of a minor child shall be governed by the additional provisions of this Article.
B. An ex parte order of temporary custody of a minor child shall not be granted unless:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
(2) The applicant's attorney certifies to the court, in writing, either:
(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
(b) The reasons supporting his claim that notice should not be required.
C. An ex parte order of temporary custody shall:
(1) Expire by operation of law within thirty days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding fifteen days.
(2) Provide specific provisions for temporary visitation by the adverse party of not less than forty-eight hours during any fifteen-day period, unless the verified petition or supporting affidavit clearly demonstrates that immediate and irreparable injury will result to the child as a result of such visitation.
(3) Be endorsed with the date on which the ex parte order is signed and the date and hour of the rule to show cause.
D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than thirty days after signing of the ex parte order of temporary custody.
E. Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void.
F. In the event an ex parte order of temporary custody is denied, the court shall specifically allocate between the parents the time which the child shall spend with each parent at the hearing on the rule to show cause set pursuant to Paragraph D of this Article, unless immediate and irreparable injury will result to the child.
G. The provisions of this Article do not apply to any order of custody of a child requested in a verified petition alleging the applicability of the Domestic Abuse Assistance Act, R.S. 46:2131 et seq., Children's Code Article 1564 et seq., or the Post-Separation Family Violence Relief Act, R.S. 9:361 et seq.

Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5th Cir. 1985).

For reasons unclear from the record, the trial court did not sign the orders denying the motions as moot until May 30, 2017.

Art. 134. Factors in determining child's best interest
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.