| EXCO COCKHERAN O/B/O ZAYDEN COCKHERAN | * | NO. 2021-CA-0370 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| RAVEN CHRISTOPHER | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
|---|---|
| RAVEN CHRISTOPHER | NO. 2021-CA-0371 |
| VERSUS | |
| EXCO COCKHERAN | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-04350 (C/W NO. 2020-05072), DIVISION "H-12"
Honorable Monique E. Barial, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins)

**LOVE, J. CONCURS AND ASSIGNS REASONS**

Michael J. Hall
Jonique Hall
LAW OFFICE OF MICHAEL J. HALL, LLC
2401 Westbend Pkwy., Suite 2102
New Orleans, LA 70114

    COUNSEL FOR PLAINTIFF/APPELLANT

Shama Farooq
Meredith Clement
Bailey Boesch
TULANE LAW CLINIC
6329 Freret St.
Suite 130
New Orleans, LA 70118-6231

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED; MOTION TO DISMISS APPEAL DENIED**

**OCTOBER 28, 2021**



Appellant, Exco Cockheran ("Mr. Cockheran") appeals the trial court's judgment awarding sole custody of the parties' minor child to appellee, R.C. pursuant to the Post-Separation Family Violence Relief Act, La. R.S. 9:361, *et seq*. For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

R.C. and Mr. Cockheran are the parents of the minor child, Z.C.[1] R.C. and Mr. Cockheran were never married.

On June 3, 2020, Mr. Cockheran filed, a petition for protection from abuse pursuant to La. R.S. 46:2131 *et seq*, against R.C. on behalf of himself and the minor child, Z.C. Mr. Cockheran alleged that R.C. secreted Z.C. to Texas without his consent. Upon review of the petition, the trial court issued a temporary restraining order against R.C.

On June 22, 2020, the trial court, finding that Mr. Cockheran failed to prove the allegations contained in his petition for protection from abuse, signed a judgment of dismissal.

---

[1] R.C. has three additional minor children not born of her relationship with Mr. Cockheran, namely P.C., Z.R., and D.R.

On June 23, 2020, R.C., *pro se*, filed a petition to establish custody. R.C. alleged that Z.C. suffers from sickle cell anemia and she has been Z.C.'s primary caretaker until Mr. Cockheran took him back to New Orleans without notice. R.C. also alleged that Mr. Cockheran was not Z.C.'s biological father.

Thereafter, R.C. retained legal representation. On August 6, 2020, R.C. filed an emergency motion to revoke or annul the authentic act of acknowledgement pursuant to La. R.S. 9:406.[2] On September 16, 2020, a hearing was held on the emergency motion. Counsel for R.C. made an oral motion for leave to amend the petition. Further, R.C. and Mr. Cockheran orally agreed upon visitation arrangements.

On September 23, 2020, the trial court signed an "Interim Judgment on Visitation" of Z.C. On the same date, the court issued an order reflecting R.C.'s decision not to proceed with the emergency motion to revoke or annul the authentic act of acknowledgement, and grant R.C's leave of court to file amended petition.

On October 8, 2020, R.C. filed an "Amended Petition for Sole Custody and Permanent Injunction pursuant to La. R.S. 9:361 *et seq*. Post-Separation Family Violence Relief Act." R.C. alleged that she met Mr. Cockheran in December 2018 while she was a victim of sex trafficking, and Mr. Cockheran was involved in the trafficking as a customer. R.C. further alleged that she began a relationship with Mr. Cockheran, and soon after was pregnant with their child. R.C. alleged that Mr. Cockheran inflicted verbal abuse, physical abuse upon her and her other minor

---

[2] La. R.S. 9:406(B)(1) provides that "[i]f the notarial act of acknowledgment has not been revoked within sixty days in accordance with the provisions of Subsection A of this Section, a person who executed an authentic act of acknowledgment may petition the court to annul the acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child."

3

children, and Mr. Cockheran threatened to reveal her location to her former sex trafficker.

R.C.'s petition sought the following relief: R.C. be awarded sole physical and legal custody of Z.C.; Mr. Cockheran be denied visitation until he has completed an approved Batterer's Intervention Program; Mr. Cockheran be ordered to submit to drug testing pursuant to La. R.S. 311.1; Mr. Cockheran be permanently enjoined from abusing, harassing, stalking, following, threatening, or contracting R.C. and their minor child Z.C.; and to prohibit Mr. Cockheran from going within fifty yards of R.C.'s residence, place of employment, and Z.C.'s daycare.

On November 20, 2020, Mr. Cockheran retained counsel. On December 10, 2020, trial was held on the matter. After the hearing, the trial court granted R.C. a permanent order of protection and sole custody of Z.C. Judgment was entered on December 29, 2020. The trial court's judgment further ordered Mr. Cockheran to attend and complete a twenty-six week batterer's intervention program.

Mr. Cockheran now appeals the trial court's judgment.

## STANDARD OF REVIEW

"An appellate court reviews domestic protective orders for abuse of discretion." *S.L.B. v. C.E.B.*, 2017-0978, p. 5 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 956 (citing *Alfonso v. Cooper*, 2014-0145, p. 13 (La. App. 4 Cir. 7/16/14), 146 So.3d 796, 805). An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *S.L.B.*, 2017-0978, p. 5, 252 So.3d at 956 (quoting *Rabalais v. Nash*, 2006-0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657). "The trial court sitting as trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility

4

determinations will not be disturbed on appeal absent manifest error." *Patterson v. Charles*, 2019-0333, p. 9 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1082 (citing *Alfonso*, 2014-0145, pp. 13-14, 146 So.3d at 805).

"Child custody decisions are reviewed under abuse of discretion standard." *Hiatt v. Duhe*, 2017-0574, p. 6 (La. App. 4 Cir. 1/31/18), 238 So.3d 484, 488 (citing *Leard v. Schenker*, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357). "Every child custody case must be viewed based on its own particular facts and the relationships involved, with the goal of determining the best interests of the child." *Hiatt*, 2017-0574, p. 6, 238 So.3d at 488 (citing *Mulkey v. Mulkey,* 2012-2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367). In most child custody matters, the trial court's determination is based on factual findings. *Hilkirk v. Johnson*, 2015-0577, p. 25 (La. App. 4 Cir. 12/23/15), 183 So.3d 731, 746 (citing *Mulkey,* 2012–2709, pp. 16–17, 118 So.3d at 368). "On appellate review, a trial court's factual findings cannot be set aside absent manifest error." *Hilkirk*, 2015-0577, pp. 25-26, 183 So.3d at 746 (citing *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989)).

## DISCUSSION

In his sole assignment of error, Mr. Cockheran asserts that the trial court erred in finding that the Post-Separation Family Violence Relief Act is applicable and in finding that there was a history of violence perpetrated by Mr. Cockheran.

### *Application of the Post-Separation Family Violence Relief Act*

Mr. Cockheran argues that there is a lack of evidence that a history of family violence existed between R.C. and Mr. Cockheran. The provisions of the Post-Separation Family Violence Relief Act create "a presumption against granting custody to any parent who is perpetuating family violence." *Hudson v. Strother*,

2017-1044, p. 10 (La. App. 3 Cir. 5/2/18), 246 So.3d 851, 859 (citing La. R.S. 9:364).

Family violence is defined by La. R.S. 9:362(4), which provides in pertinent part:

> "Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, **committed by one parent against the other parent or against any of the children**. Family violence does not include reasonable acts of self-defense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.

(Emphasis added.)

We note that while the apparent legislative intent in creating the Act was to protect victimized parties when domestic disputes arise in the course of separation and divorce, the Act has the same effect of La. R.S. 46:2131 *et seq.*, the Protection from Family Violence Act. The intent of the statutory provisions is to protect children in abusive situations. *See Gonzales v. Gonzales*, 21-172, p. 3 (La. App. 5 Cir. 7/2/21), ---So.3d----, 2021 WL 2766900 (The Fifth Circuit held that although the statutory provisions do not solely address the issue of child custody, the legislative purpose of provisions to protect children from abuse is necessarily relevant to the trial court's physical custody determination and placement of those children who are to be protected); *See also Hudson v. Strother*, 2017-1044, p. 1 (La. App. 3 Cir. 5/2/18), 246 So.3d 851, 854 (The unmarried parents were involved in a custody dispute and the court determined the application of the Post-Separation Family Violence Relief Act).

In the instant case, R.C. asserted in her petition that Mr. Cockheran has committed violent acts against her and her children. Specifically, R.C. alleged that Mr. Cockheran threatened to return her to her former sex trafficker; Mr. Cockheran

6

strangled and slammed her against a wall; Mr. Cockheran forcefully shoved and held her seven-year old son, P.C. by his neck; and Mr. Cockheran hit her two-year old son, D.R. on the legs with a ruler so hard that it broke the child's skin. R.C. testified to various incidents of abuse by Mr. Cockheran. Additionally, the record includes testimony from R.C.'s mother, as to actually witnessing abusive behavior by Mr. Cockheran.

We find that the allegations of abuse contained in R.C.'s petition triggered the Post-Separation Family Violence Relief Act. Therefore, we find no abuse in discretion in the trial court's application of the Act.

***Evidence to Establish History of Family Violence***

Next, Mr. Cockheran argues that there is a lack of supporting evidence to substantiate a finding of family violence. Mr. Cockheran also argues that the best interest of the child was not considered.

A review of the record reflects that at the December 10, 2020 hearing, testimony was provided on the alleged history of violence from Mr. Cockheran. During direct examination, R.C. provided specific incidents of abuse.

[COUNSEL FOR R.C.]:
What happened on May 19th?

[R.C.]:
Mr. Cockheran was upset with my son [P.C.]. He decided to take [P.C.] by his neck and tightened it really tight, and he took his head, his neck and his head and slammed it into the wall behind the door in the living room. And he did it about two or three times. I asked Mr. Cockheran to stop. He pushed me out of the way. And then [P.C.] went to…bed. I told [P.C.] to go to bed. And that left a mark on [P.C.] where he was bleeding.

* * *

[COUNSEL FOR R.C]:
[R.C.], did Mr. Cockheran ever put hands on [Z.R.]?

7

[R.C.]:

> He did. My daughter [Z.R.]. On several different occasion[s] he would whup [sic] her in her hands. There was one incident where he had whupped her for so long and so hard I actually told him that was enough, that it was excessive and that I didn't agree with what he was doing.

*  *  *

[COUNSEL FOR R.C]:

> Did Mr. Cockheran ever put hands on [D.R.]?

[R.C.]:

> He did. He would whup [D.R.] often. But one particular time [D.R.] was potty [sic] training. …Mr. Cockheran took it upon [himself] to assist me with potty training [D.R.]. … He did whup [D.R.] with a wood ruler on his legs because [D.R.] did have [sic] an accident where he urinated on himself and had gotten on the front porch.

*  *  *

[COUNSEL FOR R.C]:

> [R.C.], in coming back to you, you told us about the time Mr. Cockheran put his hands around your throat in March of this year. When did Mr. Cockheran begin putting hands on you?

[R.C.]:

> So it started off with just pushing and shoving me out the way, out of the doorway when I would be talking to him or he would disagree with me, he'll push and shove me. This was all throughout my pregnancy with [Z.C.]
>
> And then there was an incident of December of 2019…And he pushed me on the ground out of the bed. I was laying there, he was laying there. He pushed me out of the bed onto the floor where [Z.C.] was. [Z.C.] was in the same room with us in his swing. He pushed me on the ground really hard.

*  *  *

[COUNSEL FOR R.C]:

> [R.C.], can you please describe what you saw behind [Z.C.'s] ear?

[R.C.]:

> Yeah, that was a scar mark and also a scab that looked like it was open and it was healing but also a scab.

[COUNSEL FOR R.C]:

> And do you know where these marks came from?

8

[R.C.]:
> No, I don't know where they came from. But I do know what Mr. Cockheran told me.

[COUNSEL FOR R.C]:
> What did he tell you?

[R.C.]:
> He told me that it came from a Durag that he had put on [Z.C.'s] head.

[COUNSEL FOR R.C]:
> You said you brought [Z.C.] to the doctor. Did the doctor say anything about these injuries?

[R.C.]:
> Yes. They were concerned. And she had prescribed [Z.C.] some Bactroban as well as advised that we make a follow-up visit with his pediatrician the next day…

R.C. also testified that when she attempted to leave Mr. Cockheran, he would threaten to reveal her location to her former sex trafficker. During R.C.'s direct examination, counsel for R.C., without objection from Mr. Cockheran's counsel, offered and introduced into evidence photocopies of R.C.'s scars, P.C.'s scars, and Z.C.'s certified medical records.

Further, at the hearing, R.C.'s mother, Stacey Christopher testified to witnessing incidents of abuse from Mr. Cockheran.

[COUNSEL FOR R.C]:
> And did you ever visit [R.C.] and [Mr. Cockheran] in New Orleans?

[R.C.'S MOTHER]:
> Yes.

[COUNSEL FOR R.C]:
> When did you visit them?

[R.C.'S MOTHER]:
> On three different occasions; Thanksgiving, right after Thanksgiving of 2019 and Christmas of 2019. Also in March of 2020.

[COUNSEL FOR R.C]:
> How long did you stay in March?

[R.C.'S MOTHER]:
> Four days. I was supposed to stay a week.

[COUNSEL FOR R.C]:
> Why did you leave early?

[R.C.'S MOTHER]:
> [Mr. Cockheran] was spanking [Z.R.] on her hands and I thought it-- it started to get a little over excessive and so I got upset about it. And I just said let me go home.

* * *

[COUNSEL FOR R.C]:
> With what was he spanking her with?

[R.C.'S MOTHER]:
> A belt.

[COUNSEL FOR R.C]:
> How many times did he hit her on her hand?

[R.C.'S MOTHER]:
> At least eight times.

[COUNSEL FOR R.C]:
> And how was [Z.R.]? How was she after?

[R.C.'S MOTHER]:
> She was screaming controllably (sic) and crying.

In *Nguyen v. Le*, 2007-81, p. 7 (La. App. 5 Cir. 5/15/07), 960 So.2d 261, 265, the Fifth Circuit found that there was no history of family violence when:

> Ms. Nguyen related one incident that was corroborated by her housekeeper, but where she did not receive injury. Ms. Nguyen never witnessed Dr. Le acting violently towards the children, nor did she ever receive injury herself in any of the other uncorroborated incidents. She claimed that he cut himself twice requiring stitches, but he denied it. Ms. Nguyen admitted that she never called police nor sought a restraining order against Dr. Le. Her other descriptions of being choked were vague.

10

In *Melancon v. Russell*, 18-48, p. 9 (La. App. 5 Cir. 10/17/18), 258 So.3d 955, 962, the court upheld the trial court's award of sole custody under the Post-Separation Family Violence Relief Act to the plaintiff. The plaintiff testified that she had experienced domestic abuse from the defendant on more than one or two occasions. The plaintiff elaborated on an incident when she was pregnant and the defendant pushed her out of the door and slammed the door on her stomach, causing her to be hospitalized. The plaintiff also testified that the defendant put his hands around her neck and slammed her head against the car window. *Melancon*, 18-48, pp. 2-3, 258 So.3d at 958. The appellate court found that based on the plaintiff specifically raising the issue of domestic violence as a ground for sole custody and the testimony and evidence presented at trial, the trial court did not err in its application of Post-Separation Family Violence Relief Act and granting plaintiff sole custody of the children. *Id.*, 18-48, pp. 7-8, 258 So.3d at 961.

A trial court's determination of domestic abuse is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. *Melancon*, 18-48, p. 8, 258 So.3d at 961. The instant record depicts various incidents of domestic abuse. Similar to *Melancon*, the trial court was presented with testimony and evidence of domestic abuse. Further, distinct from *Nguyen*, R.C. provided incidents of abuse by Mr. Cockheran, including witnessing Mr. Cockheran act violently towards her children. The incidents were corroborated with evidence and other testimony.

We give great deference to the trial court's findings in matters of credibility, as the trial court is the best position to "evaluate the demeanor and mannerisms of the witnesses." *Hiatt*, 2017-0574, p. 7, 238 So.3d at 489. Here, the trial court found that the testimony of witnesses and photographs of the injuries were persuasive in

determining the history of family violence. Accordingly, we do not find that the trial court abused its discretion in awarding R.C. sole custody of Z.C.

## MOTION TO DISMISS APPEAL

R.C. filed a motion to dismiss Mr. Cockheran's appeal, arguing that this court lacks jurisdiction, because Mr. Cockheran failed to timely obtain an order of appeal.

La. C.C.P. art. 3943 provides that "an appeal from a judgment awarding custody, visitation, or support of a person can be taken only within the delay provided in Article 3942." La. C.C. P. art. 3942(A) provides that an appeal "can be taken only within thirty days from the applicable date provided in Article 2087(A)." Therefore, a motion for appeal from a judgment of custody must be taken within thirty days of either: 1) the expiration of the delay for applying for a new trial, if no application has been timely filed; or 2) the date of the mailing of the notice of the court's refusal to grant a timely filed application for a new trial. *See* La. C.C.P. art. 2087. Accordingly, Mr. Cockheran's motion for appeal had to be filed within thirty days of the expiration of the time for filing a motion for new trial.

Here, the notice of signing of judgment was mailed on January 7, 2021. Therefore, the delay for filing a motion for new trial expired on January 14, 2021.[3] The thirty day time period for filing a motion for appeal expired on February 14,

---

[3] La. C.C.P. art. 1974 provides that "[a] party may file a motion for a new trial not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment as required by Article 1913."

2021. Mr. Cockheran's "Notice of Intent to Apply for Devolutive Appeal"[4] was timely because it was filed on February 8, 2021.

The notice of intent provides that Mr. Cockheran sought to appeal the December 29, 2020 judgment. Attached to the notice of intent was an order that erroneously names the trial court as the "Civil District Court for the Parish of Jefferson" and requests an appeal from the "October 27, 2017 judgment rendered." On February 12, 2021, the trial court signed the order. On March 25, 2021, Mr. Cockheran filed a motion for leave to supplement and amend the notice of intent. The trial court signed the second order on March 26, 2021.

We find that while the proposed order of appeal includes an incorrect court name and judgment date, the notice of intent was timely and set forth the intent to appeal the December 29, 2020 judgment. Therefore, we deny the motion to dismiss Mr. Cockheran's appeal.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's December 29, 2020 judgment granting sole custody to R.C. Appellee's motion to dismiss appeal is denied.

**AFFIRMED; MOTION TO DISMISS APPEAL DENIED**

---

[4] We note that there is a thirty-day period for appealing a judgment awarding custody, visitation, or support, rather than sixty-day period established for devolutive appeals. *See* La. C.C.P. arts. 3942-43.