| ANTHONY E. HILL | * | NO. 2024-CA-0116 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| CHRISTINE STRICKLAND | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
|---|---|
| CHRISTINE M. STRICKLAND | NO. 2024-CA-0117 |
| VERSUS | |
| ANTHONY EARL HILL | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-10231, DIVISION "H"
Honorable Jane E. Booth, Judge Pro Tempore
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

Ashley Potter
THE LAW OFFICE OF JAMES A. GRAHAM, LLC
701 Loyola Avenue, Suite 403
New Orleans, LA 70113

      COUNSEL FOR PLAINTIFF/APPELLEE


N. Kim Nguyen
LAW OFFICE OF N. KIM NGUYEN, LLC
401 Whitney Ave.
Suite 515
Gretna, LA 70056

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JUNE 12, 2024**

SCJ
DLD
DNA

Appellant, Christine Strickland ("Mrs. Strickland") appeals the trial court's October 20, 2023 judgment granting the protective order and awarding Anthony Hill ("Mr. Hill") temporary custody of A.G.H. For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Mrs. Strickland and Mr. Hill are the parents of the minor child, A.G.H. Mrs. Strickland and Mr. Hill were never married. Pursuant to the January 29, 2021 consent judgment, Mrs. Strickland and Mr. Hill shared joint custody of A.G.H., with Mrs. Strickland designated as the domiciliary parent.

Mrs. Strickland filed a motion for emergency temporary custody pursuant to La. C.C.P. art. 3945 on April 19, 2023, alleging that Mr. Hill advised her that he would not be returning A.G.H. to her because he had been informed that the child had been physically disciplined. A few months later, the trial court was notified a Child-In-Need-of-Care petition ("CINC") had been filed in the Juvenile Court for the Parish of Orleans. The trial court issued an *ex propio motu* order on July 14, 2023, staying the pending matter until the Juvenile Court of the Parish of Orleans

1

relinquishes its exclusive jurisdiction over the matter. Thereafter, the CINC petition was dismissed.

On August 30, 2023, Mr. Hill filed a petition for protection from abuse pursuant to La. R.S. 46:2131 *et seq*, against Mrs. Strickland on behalf of A.G.H. Mr. Hill alleged that Mrs. Strickland failed to intervene and protect A.G.H. from the repeated punching in the stomach and chest at least once per week over the course of a year by Mrs. Strickland's husband, Jason Strickland ("Mr. Strickland"). Upon review of the petition, the trial court issued a temporary restraining order against Mrs. Strickland. Mr. Hill was granted temporary custody of A.G.H, and Mrs. Strickland was prohibited from contacting or coming within 100 yards of the minor child.

Mrs. Strickland subsequently filed an expedited motion to transfer the custody matter to the district court division where the protective order matter was pending. The trial court ordered the consolidation of the two matters. The trial court held a show cause hearing on September 21, 2023, and September 22, 2023, to address the petition for protection from abuse.[1] The trial court extended the temporary restraining order against Mrs. Strickland, and reset the matter for October 20, 2023 for a show cause hearing. On October 20, 2023, the trial court granted the protective order for eighteen months, awarding Mr. Hill temporary custody of A.G.H. and Mrs. Strickland unsupervised visitation with A.G.H. in Houston, Texas.

Mrs. Strickland now appeals the trial court's judgment.

---

[1] This matter was tried alongside another petition for protection from abuse filed by Mr. Hill against Jason Strickland, *Anthony E. Hill v. Jason Strickland*, Civil District Court Case No. 2022-10232 "H," which is also before this Court in *Anthony E. Hill v. Jason Strickland*, 2024-CA-0118.

2

## STANDARD OF REVIEW

"An appellate court reviews domestic orders for an abuse of discretion." *Carrie v. Jones*, 2021-0659, p. 4 (La. App. 4 Cir. 1/21/22), 334 So.3d 834, 839 (quoting *Patterson v. Charles*, 2019-0333, p. 9 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1082). An appellate court may not set aside a trial court's "finding of fact in the absence of manifest error or unless it is clearly wrong." *S.L.B. v. C.E.B*, 2017-0978, p. 5 (La. App. 4 Cir. 7/27/18), 252 So.3d 956 (quoting *Rabalais v. Nash*, 2006-0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657). "The trial court sitting as trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error." *Patterson*, 2019-0333, p. 9, 282 So.3d at 1082 (citing *Alfonso v. Cooper*, 2014-0145, pp. 13-14, 146 So.3d 796, 805).

"Child custody decisions are reviewed under abuse of discretion standard." *Hiatt v. Duhe*, 2017-0574, p. 5 (La. App. 4 Cir. 1/31/18), 238 So.3d 484, 488 (citing *Leard v. Schenker*, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357). "Every child custody case must be viewed based on its own particular facts and the relationships involved, with the goal of determining the best interests of the child." *Hiatt*, 2017-0574, pp. 5-6, 238 So.3d at 488 (citing *Mulkey v. Mulkey,* 2012-2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367). "In most child custody matters, the trial court's ruling is based heavily on factual findings." *Bergmann v. Nguyen*, 2021-0553, p. 14 (La. App. 4 Cir. 4/27/22), 366 So.3d 422, 432, *writ denied*, 2022-01075 (La. 10/18/22), 348 So.3d 725 (citing *Hanks v. Hanks,* [20]13-1442, p. 8 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 214) (alteration in original). An appellate court may not set aside a trial court's factual findings absent manifest

3

error. *Id.* at p. 14, 366 So.3d at 433 (quoting *Evans v. Lungrin*, 97-0541, [19]97-0577, p. 6 (La. 2/6/98), 708 So.2d 731, 735) (alteration in original).

**DISCUSSION**

Mrs. Strickland raises four assignments of error: (1) whether the trial court erred in basing its ruling on Department of Child and Family Services ("DCFS") records obtained through the trial court's *sua sponte* issuance of a subpoena duces tecum that were not properly introduced into evidence; (2) whether the trial court based its ruling on hearsay testimony of the minor child when the child's testimony was never corroborated in a *Watermeier* hearing or through physical evidence; (3) whether the trial court erred in allowing the audio recording of Candace Davis ("Ms. Davis") into evidence without proper foundation; and (4) whether the trial court erred in granting the protective order when Mr. Hill did not prove by a preponderance of the evidence domestic abuse against the minor child.

*Authentication of DCFS Records*

Mrs. Strickland argues that the trial court improperly allowed the introduction of DCFS records into evidence due to the lack of authenticity and accuracy of the documents. Mrs. Strickland further argues that the trial court failed to consider whether good cause existed for in-chambers testimony of the DCFS employee who authored the documents in order to clarify the discrepancy of the number of pages in the DCFS records, and to allow for cross examination by counsel.

"Authentication of evidence is required in order for evidence to be admissible at trial." *State in Interest of K.B.*, 2023-0409, p. 19 (La. App. 4 Cir. 9/26/23), 372 So.3d 864, 878, *writ denied*, 2023-01421 (La. 4/3/24), 382 So.3d 106 (quoting *State v. Smith*, 2015-1359, p. 6 (La. App. 4 Cir. 4/20/16), 192 So.3d 836,

4

840). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). Authentication and identification may come in the form of testimony by a witness with knowledge that the matter is what is asserted to be; indications of the item's distinctive characteristics; or evidence describing the process or system used to produce the item and showing that the process or system produces an accurate result. *State v. Rice*, 2017-0446, p. 3 (La. 6/29/17), 222 So.3d 32, 33-34 (citing La. C.E. art. 901(B)(1), (4), and (9)). Additionally, evidence may be identified "by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence." *State in Interest of J.H.*, 2022-0324, p. 11 (La. App. 4 Cir. 8/9/22), 369 So.3d 827, 835, *as clarified on reh'g* (Aug. 19, 2022) (quoting *State v. Martin*, 2013-0115, pp. 9-10 (La. App. 4 Cir. 12/4/13), 131 So.3d 121, 128).

The trial court's determinations concerning the admissibility of evidence should not be overturned "absent a clear abuse of discretion." *Id.* at p. 11, 369 So.3d at 835 (citing *State v. Cosey*, 97-2020, p. 13 (La. 11/28/00), 779 So.2d 675, 684). "A trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence." *Id.* at p. 12 (quoting *State v. Ashford*, 2003-1691, p. 14 (La. App. 4 Cir. 6/16/04), 878 So.2d 798, 806).

In this matter, Mr. Hill filed a motion for in-camera inspection and review of the records of DCFS pertaining to Mr. Strickland. During the September 22, 2023 hearing, counsel for Mrs. Strickland objected to the in-camera inspection, pointing out to the trial court the lack of service of process. In response, the trial court, on its own motion, subpoenaed the DCFS records for an in-camera inspection.

5

Thereafter, during the October 20, 2023 hearing, the trial court provided that it subpoenaed the DCFS records and received the records directly from the custodian of records accompanied with an affidavit of authenticity.

THE COURT:

> After receiving the records and in consideration of [counsel for Ms. Strickland's] objection that she made on the record, I thought it would be more appropriate for the attorneys to review the records first, before the Court considers reviewing the records.

> I will note however, that at the July 13th hearing of this matter, Mr. Hill's attorney did offer and introduce the investigative records, which I believe will probably include these. I don't know yet because I haven't looked at them, but they appear to be the same type of records. So, they may have already been in the record, but neither party has to date, has yet, had a chance to review the records that I received from my subpoena, enter objections, and/or offers of evidence. And I want to give you all the opportunity to do that before I look at the records.

Mr. Hill's counsel offered the DCFS records into evidence, and counsel for Mrs. Strickland objected.

[COUNSEL FOR MRS. STRICKLAND]:

> I still have the same objection that I had on September 22nd, Your Honor.

> And what I would add to it is that the records actually should be excluded. I didn't see the Certification from the Custodian of Records that I thought was supposed to be attached to the records.

THE COURT:

> It was in a letter to me and that's why I didn't give it to you with the records, but you're welcome to take a look at the authenticity.

[COUNSEL FOR MRS. STRICKLAND]:

> Okay. And then to further state my objection, Your Honor, it doesn't allow my client the opportunity to cross-examine the authors of those documents.

> And then as I stated on September 22nd, Your Honor, these are confidential records and it's my understanding that based on Title 46,

6

there's a specific procedure that's supposed to be followed in order to obtain those records and then attempt to offer them.

* * * *

THE COURT:

Okay. The Court will note your objection, [counsel for Mrs. Strickland].

The records it appears, and I haven't compared them yet, are already in the record of this matter, and had been previously submitted as evidence to this Court at the July 13th hearing, if you would review the record, it looks like I have to compare them, but I believe it's probably the same records.

Notably, on May 19, 2023, Mrs. Strickland requested the DCFS records through a subpoena duces tecum. On June 13, 2023, DCFS moved to file confidential records for in camera inspection in response to subpoena pursuant to La. R.S. 46:56(H). Accompanied with the motion to file confidential records was an affidavit of authenticity signed by DCFS's custodian of records. The appellate record includes a July 7, 2023 exhibit list which list the DCFS investigation report. However, the record is devoid of a July 7, 2023 transcript.[2]

Louisiana Revised Statutes 46:56 sets forth the rules for which DCFS records may be requested and used in civil litigation. La. R.S. 46:56(F)(1) provides in pertinent part:

> In any child custody proceeding, after the issue has been raised of the potential existence of a relevant departmental record concerning the abuse or neglect of a child who is the subject of that proceeding, the judge may contact the local child protection unit to determine if such a record exists. If a determination has been made that such report appears justified pursuant to Children's Code Article 615(B)(1) through (3), the local child protection unit shall verbally advise the judge that such report is in the possession of the unit. If the court finds

---

[2] "When the record lacks a transcript that is pertinent to an issue raised on appeal, the inadequacy of the record is attributable to the appellant." *Land Coast Insulation, Inc. v. Gootee Constr., Inc.*, 2021-0052, p. 5 (La. App. 4 Cir. 9/24/21), 369 So.3d 811, 814, *aff'd on reh'g*, 2021-0052 (La. App. 4 Cir. 12/1/21), 367 So.3d 5, and *writ denied*, 2022-00002 (La. 2/22/22), 333 So.3d 434.

7

that information which may be contained in the report is necessary for an issue before the court, the court may order the release of such information.

Louisiana Revised Statutes 46:56(H)(2) explains:

In the event of the issuance of a subpoena or subpoena duces tecum served upon the custodian of case records or other qualified witness or employee of the department in a civil action in which the department is not a party . . . and such subpoena requires production for trial or discovery of any or all of the department's records, it shall be sufficient compliance if the custodian or other qualified employee delivers by registered mail or by hand a true and correct copy of all records described in such subpoena to the clerk of court or other tribunal, together with an affidavit of their authenticity, to be sealed by the court and made available only to the litigants, after an in camera inspection by the court for a determination of relevance and/or discoverability, who shall be bound by the limits of confidentiality . . . . Production of said records as described in this Section shall be deemed timely if made any time prior to the requested date or date of trial, provided that the subpoena duces tecum is served at least five days prior to the requested date or date of trial.

Louisiana Revised Statutes 46:56(H)(3) expresses the determining factors for when a department employee may be permitted to testify:

No subpoena for testimony shall issue to any employee or representative of the department in such a civil suit if the department's records are available for production pursuant to R.S. 46:56(H)(2). If the court, after the in camera inspection of the department's records as described in R.S. 46:56(H)(2), determines that good cause exists for testimony by a department employee or representative, said employee or representative may be permitted to testify in chambers.

Here, subsequent to the trial court issuing a subpoena duces tecum for the DCFS records, the court made the records available to the parties' counsels for review. The trial court also stated that certification from the custodian of records was in a letter to the court and offered counsel to look at it for authenticity. Further, pursuant to La. R.S. 46:56(H)(3), cross-examination of the DCFS employee that authored the report was not necessary when the records were produced and no good cause existed for testimony by the author. "[J]urisprudence

8

indicates that, with respect to child custody cases, there is 'a relaxed evidentiary standard [...] used to advance the purposes of the custody proceeding' because 'the Louisiana legislature has concluded that the best interests of children are not served by strict application of the rules of evidence.'" *S.L.B. v. C.E.B.*, 2017-0978 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 966 (quoting *Bowden v. Brown*, 48,268, p. 17 (La. App. 2 Cir. 5/15/13), 114 So.3d 1194, 1205). As this matter includes custody issues and protection from abuse, we find that this principle is applicable.

As such, we do not find that the trial court abused its discretion in admitting the DCFS records.

*Authentication of Audio Recording*

Next, we address whether the trial court erred in admitting Ms. Davis's audio recording into evidence. Mrs. Strickland argues that the recording was made in bad faith. Mrs. Strickland further argues that only excerpts from the audio recording were played in court, resulting in only potentially prejudicial evidence being entered against her and prohibiting her from properly cross-examining Ms. Davis.

The following factors have been used in determining whether foundation has properly been laid for the admissibility of a redacted audio recording: (1) the recording device was capable of taking the conversation now offered in evidence; (2) the operator of the device was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions or deletions have not been made in the recording; (5) the recording had been preserved in a manner that is shown to the court; (6) the speakers are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*S.L.B.*, 2017-0978, p. 22, 252 So.3d at 966 (quoting *State v. Luckey*, 2016-494 (La. App. 5 Cir. 2/8/17), 212 So.3d 1220, 1232).

In this matter, at the September 21, 2023 hearing, Ms. Davis testified that Mrs. Strickland previously attempted to contact her. Ms. Davis provided that she decided to return Mrs. Strickland phone call and record the conversation. The call was held on Ms. Davis's personal phone and the conversation was recorded using Ms. Davis's company phone. Both Ms. Davis's personal and company phones were present during the hearing.

Moreover, excerpts from the conversation held on the company phone were played during the hearing to confirm that it was the same recorded excerpt copies that would be introduced into evidence. Ms. Davis identified that she and Mrs. Strickland were speaking on the recording.

The audio recording excerpts were introduced without objection from Mrs. Strickland's counsel:

[COUNSEL FOR MRS. STRICKLAND]:

And [Counsel for Mr. Hill] played both of the junk drives on her computer, as well as the recording from the actual device that was the original.

THE COURT:

Do you have any objection to the admission of P-2 into evidence?

[COUNSEL FOR MRS. STRICKLAND]:

I don't. However, Your Honor, I do want to make note that there were only certain portions that were played, it wasn't my understanding that she was willing to introduce the entirety of the recording.

THE COURT:

Yes, You're correct, [counsel for Mrs. Strickland]. I'd like you to go ahead and make your tender to the Court with respect to that piece of evidence.

[COUNSEL FOR MR. HILL]:

Yes, Your Honor. We'd like to offer, file and introduce the excerpts from P-2. I can provide on my exhibit sheet those timestamps that we previously noted.

As such, we do not find that the trial court abused its discretion in admitting the audio recording into evidence.

*Watermeier Hearing*

Mrs. Strickland contends the trial court erred in basing its ruling on the hearsay testimony of witnesses to whom A.G.H informed of abuse. Mrs. Strickland argues that no *Watermeier* hearing was conducted and no medical records of physical abuse were introduced into the record.

"A '*Watermeier* hearing' is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody." *Patterson v. Charles*, 2019-0333, p. 20 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1089 (quoting *S.L.B.*, 2017-0978, p. 13, n.12, 252 So.3d at 960). "[C]ourts have conducted a *Watermeier* hearing in the context of child custody disputes as well as for a petition for protection from domestic abuse." *Id.* (citing *S.L.B.*, 2017-0978, p. 13, 252 So.3d at 961).

In *Patterson*, this Court noted that in *Watermeier v. Watermeier*, 462 So.2d 1272 (La. App. 5 Cir. 1985), the Fifth Circuit established that "[w]hether the minor child has proper understanding, such that he will be allowed to testify, is a matter within the discretion of the trial judge." 2019-0333, p. 21, 282 So.3d at 1089 (quoting *Watermeier*, 462 So.2d at 1274) (alteration in original). Additionally, this

11

Court recognized that while the *Watermeier* court determined a proper procedure for handling a child's testimony, "the Fifth Circuit Court in *Penn v. Penn*, [20]09-213, p. 5 (La. App. 5 Cir. 10/27/09), 28 So.3d 304, 307, 'made it clear that this procedure was not mandated' where there was no objection or agreement by the parties to another procedure." *Id.* at p. 23, 282 So.3d at 1090.

In *Toups v. Toups*, 2014-960, unpub., (La. App. 3 Cir.), 2015 WL 904014, the court determined whether the trial court erred by not interviewing the minor child as provided in *Watermeier*. The court noted that "Watermeier does not require that the trial court interview all children in custody matters." *Toups*, 2014-960, 2015 WL 904014, at *2. The *Toups* court found that the trial court's failure to interview the minor was not legal error, providing that the appellant did not ask the trial court to interview the minor, and did not object to the trial court not interviewing the minor. *Id.*

Here, the admission of hearsay testimony by A.G.H's father, Mr. Hill and his aunt, Shatoyia Nicholson ("Ms. Nicholson") concerning statements made to them indicating that Mr. Strickland punched A.G.H. in the chest was harmless, considering that Mrs. Strickland testified that she witnessed Mr. Strickland physically discipline A.G.H.

[COUNSEL FOR MR. HILL]:

You've heard in previous testimony or through previous testimony, the term backhand as it applies to discipline. Do you recall that?

MRS. STRICKLAND:

Yes.

[COUNSEL FOR MR. HILL]:

And how would you characterize a backhand?

MRS. STRICKLAND:

The back of your hand making contact with the body.

[COUNSEL FOR MR. HILL]:

And have you witnessed Mr. Strickland backhand [A.G.H.] before?

MRS. STRICKLAND:

Yes.

Furthermore, Mrs. Strickland failed to object to Mr. Hill's and Ms. Nicholson's testimony, and therefore, cannot raise it for the first time on appeal. Mr. Hill and Ms. Nicholson were also subject to cross-examination by Mrs. Strickland. "[F]ailure to object at the time the testimony is offered 'constitutes a waiver of the right to object to its admissibility, and such evidence may be considered and given probative effect.'" *Jennings v. Jennings*, 2021-0386, p. 8 (La. App. 4 Cir. 12/1/21), 332 So.3d 179, 185 (quoting *Brown v. Chategnier*, 2016-0373, p. 4 (La. App. 4 Cir. 12/14/16), 208 So. 3d 410, 414). As such, we find no error in the trial court considering the testimony of Mr. Hill and Ms. Nicholson.

*Protective Order*

Finally, Mrs. Strickland argues that the trial court erred in granting a protective order because Mr. Hill has not met his burden of demonstrating by a preponderance of the evidence that Mrs. Strickland committed domestic abuse to the minor child.

Louisiana Revised Statutes 46:2131 *et seq.*, the Protection from Family Violence Act, provides protection in the form of temporary restraining orders and protective orders for persons subject to domestic abuse. The intent of the statutory provisions is to protect children in abusive situations. *See Gonzales v. Gonzales*,

21-172, unpub., p. 3 (La. App. 5 Cir. 7/2/21), 2021WL 2766900 (holding that although the statutory provisions do not solely address the issue of child custody, the legislative purpose of provisions to protect children from abuse is necessarily relevant to the trial court's physical custody determination and placement of those children who are to be protected).

Domestic abuse is defined by La. R.S. 46:2132, in pertinent part as:

include[ing] but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another.

"Except as provided in La. R.S. 46:2136(F)(2), any final protective order shall be for a fixed period of time, not to exceed 18 months; however, the court has discretion to extend a protective order after conducting a contradictory hearing." *Milam v. Hughes*, 2022-0407, p. 7 (La. App. 1 Cir. 12/29/22), 360 So.3d 852, 857 (citing La. R.S. 46:2136(F)(1)). The court may award temporary custody of or establish "temporary visitation rights and conditions with regard to any minor children." La. R.S. 46:2136(A)(3).

In the instant matter, Mr. Hill alleged that Mrs. Strickland failed to intervene and protect A.G.H. who was eight years old at the time, from the repeated abuse over the course of a year by Mr. Strickland.

The DCFS investigation report describes an incident in which A.G.H and his little brother were playing basketball and Mr. Strickland allegedly punched A.G.H. for blocking his brother's shot when playing. Mr. Strickland testified that A.G.H. antagonized his little brother by "blocking his shot, hitting the ball, taking the ball from him . . . typical big brother stuff, but it had gone too far." Mr. Strickland stated that he asked A.G.H. multiple times to stop.

MR. STRICKLAND:

. . . I came out, I said; "Say, Bruh, this is my last time telling you. Don't do it again." So he didn't do it again. He took another ball and started using the ball to do the things that I told him not to do. And that's when I came inside and I grabbed him and I told him to go inside.

Mr. Strickland further testified that he has never punched A.G.H., however, he has made contact with A.G.H.'s chest without a closed fist. Mr. Strickland provided that he has given A.G.H. a "quick backhand."

Mrs. Strickland stated in the audio recording to Mr. Hill that A.G.H. "definitely got hands put on him before." Mrs. Strickland also testified that Mr. Strickland has physically disciplined A.G.H. She testified that the term "backhand" means making contact with the body. Mrs. Strickland attested that she has witnessed Mr. Strickland "backhand" A.G.H. and has never intervened when Mr. Strickland used physical discipline on A.G.H. Mrs. Strickland further provided in her testimony that she believes in "putting hands on kids."

After hearing arguments from both parties, testimony of witnesses, the audio recording, and reviewing the DCFS records, the trial court determined that Mrs. Strickland committed non-physical domestic abuse. We give great deference to the trial court's findings in matters of credibility, as the trial court is the best position to "evaluate the demeanor and mannerisms of the witnesses." *Hiatt*, 2017-0574, p. 7, 238 So.3d at 489. Accordingly, we do not find that the trial court abused its discretion in granting a protective order in favor of Mr. Hill on behalf of A.G.H. and granting Mrs. Strickland unsupervised visitation with A.G.H. in Houston, Texas.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's October 20, 2023 protective order.

**AFFIRMED**